## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AARON DALE EATON**, | Case No. 2:20-cv-1251-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TWO RIVERS CORRECTION INSTITUTION GRIEVANCE COORDINATOR ENYON**, et. al | |
| Defendants. | |

Aaron Dale Eaton, Two Rivers Correctional Institution, 82911 Beach Access Rd., Umatilla, OR 97882-9419. *Pro Se*

Ellen F. Rosenblum and Vanessa A. Nordyke, Oregon Department of Justice, Trial Division, 1162 Court St. NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Aaron Dale Eaton, a prisoner at the Two Rivers Correctional Institution (TRCI),

filed a *pro se* complaint alleging that the Oregon Department of Corrections (ODOC) and several

of its employees, identified in the Second Amended Complaint as Defendants Enyon, Rossi,

Stark, Darcy, T. Blewett, and Maney (collectively, ODOC employees or Individual Defendants),

violated his First, Eighth, and Fourteenth Amendment rights. *See* 42 U.S.C. § 1983. Eaton also

PAGE 1 – OPINION AND ORDER

brings claims against Defendants Enyon, Stark, Darcy, T. Blewett, Rossi, and Maney under the Americans with Disabilities Act (ADA) and the Oregon Vulnerable Persons Act (VPA). Finally, Eaton brings a common-law negligence claim against Stark, Darcy, T. Blewett, and Maney.

Defendants move to partially dismiss Eaton's complaint. Defendants argue that Eaton's negligence and VPA claims are barred by Eleventh Amendment immunity. Eleventh Amendment immunity, Defendants further argue, also bars Eaton's § 1983 suit against ODOC. Finally, Defendants ask the court to dismiss Eaton's ADA claim for failure to state a claim.

In addition to Defendants' motion to dismiss, Eaton's "Motion to Restrict" (ECF 42) is also before the Court. Eaton argues that the Defendants delayed in responding to his discovery request and then provided him with excessive discovery. Eaton now asks the Court to both "warn" Defendants not to cause further delay and to instruct Defendants to restrict further document productions to strictly those documents responsive to Eaton's request. Eaton also seeks leave to further amend his complaint.

For the reasons that follow, the Court grants in part and denies in part Defendants' partial motion to dismiss Eaton's Complaint. The Court denies Eaton's motion to restrict. Finally, the Court grants Eaton partial leave to his amend his Complaint.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice

of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Eleventh Amendment sovereign immunity precludes a plaintiff from recovering damages or injunctive relief in federal court against a state or its agencies. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). There are two exceptions to the Eleventh Amendment jurisdictional bar: (1) Congress can abrogate the Eleventh Amendment without the consent of the states in certain situations; and (2) a state may waive its immunity by consenting to suit in federal court but must do so by "the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Micomonaco v. State of Wash.*, 45 F3d 316, 319 (9th Cir. 1995). A statute consenting to suit in state court does not constitute consent to suit in federal court. *Fordyce v. City of Seattle*, 55 F3d 436, 441 (9th Cir. 1995).

## BACKGROUND

### A. Eaton's Allegations

Eaton's Second Amended Complaint, the operative complaint for purposes of Defendants' partial motion to dismiss, alleges the following.

Eaton is incarcerated at TRCI, a prison facility operated by ODOC. Eaton suffers from mental illness, Chronic Obstructive Pulmonary Disease (COPD), and asthma. Defendants are ODOC and several ODOC employees, including TRCI Physical Plant Manager Stark, TRCI Physical Plant Assistant Manager Darcy, TRCI Grievance Coordinators Rossi and Enyon, TRCI Superintendent T. Blewett, and Maney, a medical care provider at TRCI.

In February 2020, Eaton "developed a sore throat, headaches, itchy skin, diarrhea, confusion, nausea, and allergy type symptoms that . . . caused wheezing and breathing problems." Second Am. Compl. (ECF 3) at 4. Eaton alleges that these symptoms are the result of the presence of toxic black mold in the showers of his housing unit. Eaton has both seen the black mold himself and purports to have multiple declarations from other inmates who saw the black mold and developed respiratory ailments around the same time as Eaton did.

Eaton alleges that Defendants refused to remedy the black mold, even after Eaton and others reported it. On February 25, 2020, after Eaton first got sick, a corrections officer in Eaton's housing unit sent a work order to the TRCI Physical Plant team requesting inspection of the showers in Eaton's housing unit for possible black mold. Stark, the Physical Plant manager, however, refused to inspect the showers himself or send anyone else to do so. Because Stark refused, on February 28, the corrections officer instructed Larry Beasley, TRCI's "Bio-Hazard orderly" to clean the showers instead. Beasley's cleaning, however, did not remove the mold. Defendants nevertheless told Eaton that the showers were safe.

Eaton then filed several grievances relating to the continued black mold infestation. He filed his first grievance on March 20, 2020. On April 19, 2020 having received no response, Eaton inquired about the status of his grievance in a letter to the grievance department. The next day, Eaton was informed that the grievance was denied. When Eaton appealed the denial,

however, TRCI vacated the denial and accepted Eaton's original grievance. Eaton alleges that

this reversal occurred because TRCI Grievance Coordinators Enyon and Rossi "realized Mr.

Eaton's intent [to] hold[] them personally accountable as much as the law will allow" and so

"they change[d] the denial to an acceptance to intentionally delay, hinder, stymie, chill, Mr.

Eaton's right to access the court for redress of grievances." Second Am. Compl. (ECF 30) at 15.

Eaton experienced similar delays to subsequently filed grievances. Eaton alleges that his efforts

to have the black mold abated were further frustrated by the combination of two ODOC

grievance policies. One policy prohibits inmates from filing more than one grievance related to a

single incident. Another policy prohibits inmates from grieving the actions of more than one

ODOC employee in a single grievance. The combination of the rules, Eaton alleges, results in

him being unable to file a grievance about multiple TRCI employees ignoring the black mold

infestation.

Frustrated with the grievance process, Eaton wrote directly to Colette Peters, Director of

the Oregon Department of Corrections, about the black mold on April 23. On May 7, Eaton

received a response acknowledging his letter to Peters. On May 8, employees from the Physical

Plant came to the unit to inspect the showers. Eaton alleges that, the same day, Beasley was

instructed to bleach the showers in housing unit two and that only after Beasley had bleached the

showers did the Physical Plant employees arrive to take pictures of the showers.

On May 11, Lt. Robinson followed up with Eaton about Eaton's letter to Peters. Eaton

showed Robinson the black mold and Robinson promised to have the mold removed. On May

12, Eaton received a letter from Defendant T. Blewett promising to "move[] forward preparing a

plan to keep our Institution to a high level of cleanliness." Second Am. Compl. (ECF 3) at 10.

On May 31, Eaton received a letter from Robinson confirming that TRCI was removing shower

tiles contaminated with black mold. Despite these promises, Eaton alleges that, at least as of

September 14, 2020, the showers continued to be contaminated with black mold. Eaton continues

to suffer from chronic fatigue and frequent thirst.

Finally, Eaton alleges that TRCI medical officials retaliated against him for reporting the

black mold by denying him appropriate medical care. When he first became ill in February,

Eaton visited TRCI medical staff, who prescribed him Albuterol to assist his breathing. The

Albuterol prescription expired in April, however, and medical staff, including Defendant Maney,

refused to prescribe Eaton a refill. In May, Eaton filed a grievance relating to Maney's refusal to

refill his Albuterol prescription or otherwise treat his respiratory ailments. Later that same

month, Eaton informed medical staff that was experiencing nose bleeds that he believed were

caused by the black mold. Medical staff informed Eaton the nose bleeds were unrelated to mold.

In September, a TRCI nurse examined Eaton and found damage to Eaton's left lung. The nurse

recommended that Eaton use a steroid inhaler. It is not clear from Eaton's Complaint whether he

has received that inhaler.

## B. Procedural History

November 2, 2020, after briefing was completed on Defendants' partial motion to

dismiss, Eaton moved the Court to compel the Defendants to provide him with copies of his own

medical records. ECF 35. On November 14, 2020, Defendants represented to the Court that they

provided Eaton his records after he filed his motion to compel. ECF 37. On November 17, 2020,

however, Eaton informed the Court that he had not received his records, contrary to Defendants'

representation. ECF 38. Eaton asked the Court "to 'warn'" Defendants that further delay "will be

treated as contempt of court." ECF 38 at 1-2.

On November 23, 2020 Eaton informed the Court that he had received the medical

records, but still requested that the Court "warn" Defendants that further delay may result in

sanctions. ECF 44. That same day, Eaton moved the Court to direct Defendants "to restrict the issuing of discovery to that which was requested by [Eaton]" and for leave to amend the complaint. ECF 42.

## DISCUSSION

### A.  Defendants' Motion to Dismiss

#### 1.  Eleventh Amendment Immunity

Defendants argue that many of Eaton's claims are barred by Eleventh Amendment immunity. First, Defendants argue that Eleventh Amendment immunity bars all of Eaton's state law claims against ODOC employees for actions they took in the course and scope of their employment. Second, Defendants argue that Eleventh Amendment immunity bars Eaton's § 1983 claim against ODOC.

##### a.  Eaton's Negligence Claim and Oregon Vulnerable Persons Act Claim

Eaton brings two state law claims against ODOC employees who he alleges allowed black mold to fester in his housing unit's showers. First, Eaton alleges a common law negligence claim. Second, Eaton alleges a claim under the VPA. Defendants argue that Eleventh Amendment immunity bars Eaton from bringing state law claims against them in federal court for actions taken in the course and scope of their employment.

The Supreme Court has interpreted the Eleventh Amendment generally to prohibit a citizen from suing a state in federal court. *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). The State of Oregon has not waived its sovereign immunity from suit in federal court. The Oregon Tort Claims Act ("OTCA") does provide for a limited waiver of sovereign immunity. It is not, however, a waiver of Eleventh Amendment immunity from suit in federal court. *See Millard v. Or. Dep't of Corr.*, 2014 WL 2506470, at *14 (D. Or. June 3, 2014); *see also Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161,

1165 (D. Or. 2004) ("The [OTCA] is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties against the state must be brought in state court."). Suits against the state of Oregon, including suits against Oregon's employees, officers, or agents acting within the course and scope of their employment, under OTCA must be brought in state court. *See Blair v. Toran*, 1999 WL 1270802, at *23 (D. Or. Dec. 1999) *aff'd* 12 F. App'x 604 (9th Cir. 2001).

Eaton argues that, because he is suing ODOC employees in their individual rather than official capacity, sovereign immunity does not bar his state law claims against the employees. The individual versus official capacity distinction is relevant to the viability of Eaton's § 1983 claim, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991), but it has no bearing on whether he can bring state law claims against ODOC employees for actions they took in the course and scope of their employment in federal court. *See Millard*, 2014 WL 2506470, at *14 (finding that a prisoner's state law claims against prison employees was barred by Eleventh Amendment immunity, even when the prisoner sued the prison employees in their individual capacity).

The State of Oregon has not consented to suit in federal court or otherwise waived its immunity as is relevant to Eaton's claims. *See Delong Corp v. Or. State Highway Comm'n*, 343 F.2d 911, 912 (9th Cir. 1965). Accordingly, Eaton cannot bring state law claims against employees of the State of Oregon for actions that the ODOC employees took in the course or scope of their employment in this Court. No amendment can cure this defect.

Perhaps anticipating this outcome, Eaton argues that the rules governing federal courts' jurisdiction over state law claims deprive him of equal protection of the law. Specifically, Eaton argues that it is unfair that defendants can remove any complaint alleging violations of federal law to federal court but that plaintiffs cannot remove a complaint alleging state law violations to

state court. There is no unfairness in this arrangement. After all, plaintiffs get to choose which claims are alleged and in which courts the claims are brought. Moreover, Eaton's complaint is in federal court because that is where Eaton chose to file it. Defendants did not remove Eaton's complaint.

State courts do, however, remain available to Eaton should he prefer to litigate there. Eaton could voluntarily dismiss his Complaint before this Court and file a complaint that includes both his § 1983 and state law claims in state court. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980) (holding that state courts may hear § 1983 claims). If Defendants then chose to remove Eaton's state-court complaint to federal court, that act of removal likely will hbe deemed to be a waiver of any Eleventh Amendment immunity arguments against Eaton's state law claims. *See Brainard v. W. Or. Univ.*, 2017 WL 1534191, at *2 (D. Or. Apr. 26, 2017). To the extent Defendants might attempt to remove only Eaton's § 1983 claim to federal court, the Court expresses no opinion on whether a court would permit such claim-splitting.

### b. Eaton's § 1983 Claim against the Oregon Department of Corrections

Defendants also argue that Eaton's § 1983 claim against ODOC is barred by sovereign immunity. The Supreme Court has interpreted the Eleventh Amendment generally to prohibit a citizen from suing a state in federal court. *College Savings Bank*, 527 U.S. at 669-70. A state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or the state itself has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). Congress has not abrogated Eleventh Amendment state sovereign immunity for § 1983 claims. See *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1188 (9th Cir. 2012).

Moreover, a governmental agency that is an arm of the state is not a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Sato v. Orange Cty. Dep't of Educ.*,

861 F.3d 923, 928 (9th Cir.) (explaining agencies of the state are immune under the Eleventh

Amendment from private damages or suits for injunctive relief brought in federal court), *cert.*

*denied*, 138 S. Ct. 459 (2017); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Doe v.*

*Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d

1387, 1398–99 (9th Cir. 1993) (en banc); *cf. Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th

Cir. 1991) (explaining that agencies that are arms of the state are entitled to the same immunity

from suit as the state because "'the state is the real, substantial party in interest'" (citation

omitted)).Thus, Eaton may not bring an action in federal court asserting a violation of § 1983 by

the State of Oregon or an "arm" of the State.

    State prisons are considered state agencies for purposes of the Eleventh Amendment.

*Allison v. Cal. Youth Auth.*, 419 F.2d 822, 823 (9th Cir.1969). ODOC is considered a state

prison; therefore, claims against it are subject to the Eleventh Amendment. *See Thunderbird v.*

*Or. State Dep't of Corr.*, 2011 WL 2971798, at *8 (D. Or. June 28, 2011) (holding that claim

against ODOC is barred by Eleventh Amendment). Because Eaton's ODOC is an arm of the state

and Eaton's only claim against ODOC is under § 1983, for which Congress has not abrogated

sovereign immunity, Eaton's claim against ODOC is barred by sovereign immunity. Eaton

brings no other claim against ODOC, nor could he. Accordingly, ODOC must be dismissed from

this action. No amendment can cure this defect.

    **2.  Eaton's Claim under the Americans with Disabilities Act**

    Finally, Defendants argue that Eaton has failed to state a claim under the ADA. *See* Fed.

R. Civ. P. 12(b)(6). Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such
> disability, be excluded from participation in or be denied the
> benefits of the services, programs, or activities of a public entity,
> or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II covers discrimination against inmates in state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The implementing regulations to § 12132 explain that discrimination on the basis of a disability include instances when a prisoner with a disability is "denied the benefits of, the services, programs, or activities of a public entity" "because [the prison's] facilities are inaccessible to or unusable by individuals with disabilities." 28 C.F.R. § 35.152(b)(1).

To prevail on an ADA claim, Eaton must show that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as am. on denial of reh'g en banc* (Oct. 11, 2001)).[1]

Defendants argue that, because Eaton alleges that *all* prisoners in his housing unit used showers infested with black mold, Eaton has failed to allege that he suffered any discrimination. *See* Defs.' Reply in Supp. Mot. to Dismiss (ECF 33) at 5 ("Plaintiff says all of the showers needed decontamination, therefore everyone—disabled or not—was exposed to the same thing."). This argument is unavailing. As the Ninth Circuit has explained, Congress intended

---

[1] Eaton's ADA claim is against Defendants Stark, Darcy, T. Blewett, Enyon, and Rossi "in their individual [or] official capacities as applicable." Second Am. Compl. (ECF 33) at 28. "Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001). Thus, the Court construes Eaton's ADA claim as one against Stark, Darcy, T. Blewett, Enyon, and Rossi in their official capacities. A plaintiff may simultaneously sue prison officials in their official capacities for an ADA claim and in their individual capacities for a § 1983 claim. *Id.*

§ 12132 to "address 'outright intentional exclusion' *as well as* 'the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices.'" *Crowder v. Kitagawa*, 81 F.3d 1480, 1483 (9th Cir. 1996) (quoting 42 U.S.C. § 12101(a)(5)) (emphasis added). Stairs are a paradigmatic example of the latter. "Few would argue that architectural barriers to disabled persons such as stairs . . . are intentionally discriminatory. Yet, stairs can deny the wheelchair-bound access to services provided on the second floor of a government building . . . ." *Id.*

Paradigmatic examples are helpful, but they are unnecessary here, given that regulations and case law illustrate the deficiency of Defendants' argument. Start with § 12132's implementing regulations, which explain that a prison discriminates by reason of a prisoner's disability when the prisoner is denied access to prison services because a prison "facility is inaccessible to or unusable by individuals with disabilities." 28 C.F.R. § 35.152(b)(1). Case law also reveals Defendants' argument to be untenable. For example, in *Nattiel v. Florida Department of Corrections*, 2017 WL 5774143 (N.D. Fla. Nov. 28, 2017), the court found that a plaintiff prisoner with disabilities including asthma and partial blindness had adequately alleged discrimination by reason of the prisoner's disability where the prison sprayed *all* prisoners with a chemical agent. 2017 WL 5774143, at *1. Because the chemical agent posed a greater risk of substantial injury to someone with the plaintiff prisoner's disabilities than to other prisoners, the court reasoned, the plaintiff prisoner had adequately alleged discrimination. *Id.*; *see also Nattiel v. Tomlinson*, 2017 WL 5799233, at *7 (N.D. Fla. July 13, 2017) *R.& R. adopted sub nom. Nattiel v. Fla. Dep't Corr.*, 2017 WL 5774143 (N.D. Fla. Nov. 28, 2017).

Here, Eaton has alleged that the showers in his unit contain black mold, Second Amended Complaint (ECF 30) at 4, 5, 7, and 8; that he is made sick by using the showers, *id.* at 4, 5, 8,

and 21; and that black mold tends to exacerbate respiratory problems for those with asthma, Compl., Ex. 2 (ECF 2-2) at 15 ("Molds may aggravate asthma."), *id.* at 32 ("Mold exposure may worsen asthma . . . .").[2] Although black mold would be unpleasant for all prisoners, Eaton, crucially, has alleged that because of his asthma, the black mold poses a more substantial risk of injury to him than non-disabled prisoners. Thus, in alleging that all prisoners in his housing unit used showers infested with black mold, Eaton has not pleaded himself out of an ADA claim.[3] The Court denies Defendants' motion to dismiss Eaton's ADA claim.

---

[2] Eaton's allegations that black mold exacerbates respiratory problems for those with asthma come in the form of attachments to his first complaint. *See* Compl. (ECF 2). Eaton has since filed two amended complaints, *see* First Amended Complaint (ECF 21); Second Amended Complaint (ECF 30), the second of which is now the operative complaint. The Second Amended Complaint states that "Mr. Eaton is attaching 100% of his exhibits to the end of his complaint." Second Am. Compl. (ECF 30) at 20. No exhibits, however, are attached to the Second Amended Complaint. The Court thus construes Eaton's Second Amended Complaint as incorporating those exhibits attached to his initial Complaint. Exhibits attached to a complaint and incorporated by reference are generally considered part of the complaint. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 964 n.6 (9th Cir. 2014).

[3] That Defendants' argument fails does not necessarily mean Eaton's ADA claim is without its own deficiencies. The Court, however, takes no positions on potential deficiencies that Defendants decline to raise.

As this litigation proceeds, Eaton should consider that, under § 12132, discrimination by reason of one's disability is discrimination that is either intentional or the product of deliberate indifference. *Updike*, 870 F.3d at 950. To allege deliberate indifference, a plaintiff must allege facts plausibly showing that the defendant both (1) had "knowledge that a harm to a federally protected right substantially likely," and (2) "failure[d] to act upon that . . . likelihood." *Duvall*, 260 F.3d at 1139. When a plaintiff informs the public entity of the needs prompted by his disabilities, he satisfies the first prong. *Id.* The failure to act, meanwhile, "must be a result of conduct that is more than negligent" and "involve[] an element of deliberateness." *Id.* Failure that is merely "attributable to bureaucratic slippage," does not amount to deliberate indifference. *Id.*

**B.  Eaton's Motion to Restrict**

In his so-called "Motion to Restrict", Eaton asks the Court to restrict what discovery Defendants may send him and to warn Defendants that delay can result in sanctions. The Court denies both of Eaton's requests

In that same filing, Eaton requests leave to further amend his complaint. The Court grants in part and denies in part Eaton's request for leave to amend his complaint. No amendment can cure the Eleventh Amendment immunity defects in Eaton's state law claims against the Individual Defendants and § 1983 claim against ODOC. Accordingly, Eaton may not amend his complaint to raise those now-dismissed claims. Eaton may, however, further amend his § 1983 and ADA claims, which will proceed from this Order.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss (ECF 22). The Court dismisses Eaton's state law claims as well as his § 1983 claim against ODOC. This litigation may proceed on Eaton's ADA and § 1983 claims against the Individual Defendants. The Court further DENIES Eaton's Motion to Restrict (ECF 42). The Court GRANTS Eaton partial leave to amend his complaint. Eaton must file any amended complaint within 14 days of this order.

**IT IS SO ORDERED**.

DATED this 15th day of December, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge