ELLEN F. ROSENBLUM
Attorney General
VANESSA A. NORDYKE #084339
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4792
Email: Vanessa.A.Nordyke@doj.state.or.us

Attorneys for Defendants Blewett, Darcy, Eynon, Rossi, Stark, maney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AARON DALE EATON,<br><br>Plaintiff,<br><br>v.<br><br>Two Rivers Correctional Institution Grievance coordinator EYNON; Two Rivers Correctional Institution Grievance coordinator ROSSI; Two Rivers Correctional Institution Physical Plant Manager STARK; Two Rivers Correctional Institution Physical Plant Asst. Manager; DARCY; Two Rivers Correctional Institution Superintendent T. BLEWETT; the OREGON DEPARTMENT OF CORRECTIONS; in their individual and official capacities as appropriate,<br><br>Defendants. | Case No. 2:20-cv-01251-SI<br><br>STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

**CERTIFICATE OF CONFERRAL**

Pursuant to L.R. 7-1(a)(1)(A), counsel for state defendants certifies that plaintiff is a self-

represented litigant in the custody of the Oregon Department of Corrections. Counsel for state

Page 1 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
   VAN/cbh/10416092-v1

defendants communicated with counsel for co-defendant LeCloux via email before filing this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 56(a), state defendants move against Dkt # 96 (Fourth Amended Complaint) the Court for an order dismissing this case for failure to state a claim on all claims, failure to establish personal involvement on some defendants, and failure to exhaust administrative remedies on some defendants. *See Albino v. Baca*, 747 F.3d 1162, 1168-71 (9th Cir. 2014). This motion is supported by the legal arguments below, the previously filed Declarations of Grievance Coordinator Eynon and Physical Plant Manager Stark, in addition to the second Declaration of Grievance Coordinator Eynon, and Attachments 1 and 2 (Responses to Requests for Admission and Interrogatories by Defendant Willis)

## MEMORANDUM OF LAW

I. **STANDARDS OF REVIEW**

   A. **Summary Judgment**

Summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is for the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once that initial burden is satisfied, the burden shifts to the non-movant to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To defeat summary judgment, a non-moving party must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "where the record

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

        **B.**    **The *Albino v. Baca* summary judgment standard for exhaustion issues.**

Exhaustion of administrative remedies is an affirmative defense properly raised by a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). If the evidence, viewed in the light most favorable to the prisoner, "shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 4-5. If there are disputed issues of fact that preclude summary judgment on the issue of exhaustion, those factual disputes should be resolved by a court—not a jury—in the same manner that a court would decide disputed factual questions relevant to jurisdiction or venue. *Id.* at 14. The defense of exhaustion should be decided "before reaching the merits of a prisoner's claim." *Id.*

**II.**    **LEGAL ARGUMENT.**
        **A.**    **The Prison Litigation Reform Act (PLRA's) pre-suit exhaustion requirement.**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that an inmate exhaust all remedies prior to filing an action under any federal law. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA exhaustion requirement serves several important purposes that "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524. The requirement allows corrections officials the opportunity to engage in corrective action that could obviate the need for litigation as well as create an administrative record useful to litigation. *Id.* at 525.

Section 1997e(a) specifies that "[n]o action shall be brought . . . until . . . available remedies are exhausted." 42 U.S.C. § 1997e(a). Under this provision, no claim may be pursued in court unless the prisoner has given the prison authorities an opportunity to consider providing some relief regarding the facts underlying the grievance. *See Booth v. Churner*, 532 U.S. 731, 736 (2001). Moreover, inmates are required to exhaust all available remedies prior to filing

Page 3 -    STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Section 1983 actions, including appealing any grievance decision to its highest level within the grievance system. *See Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

To be considered an "available remedy," the remedy must be "capable of use; at hand." *Albino*, 747 F.3d at 1171. The exhaustion provisions of 42 U.S.C. § 1997e(a) are an affirmative defense that the defendants must advance, not pleading requirements placed on the shoulders of the inmate in a 42 U.S.C. § 1983 action. *Albino*, 747 F.3d at 1172. Here, defendants have advanced the defense of exhaustion, demonstrating that remedies were available, at hand and capable of use by plaintiff. Plaintiff's complaint history demonstrates his familiarity with ODOC's grievance system.[1]

### B. No exhaustion of administrative remedies for Darcy, Eynon, Lemmon, Maney, Robinson, or Willis

Plaintiff did not specifically mention or grieve Defendants Darcy, Eynon, Lemmon, Maney, Robinson, or Willis for any allegations in his fourth amended complaint. Second Decl. Grievance Coordinator, ¶ 39. Nor did any of these Defendants respond to any of the above grievances which concern the allegations in his fourth amended complaint. Adults in custody (AICs) should include all involved staff in their grievance concerning the same incident. First Decl. Grievance Coordinator, Att. 2, OAR 291-109-0210(1)(a). His failure to grieve them constitutes a failure to initiate, let alone exhaust, administrative remedies. Defendants Darcy, Eynon, Lemmon, Maney, Robinson, or Willis must be dismissed without prejudice.

Plaintiff filed several grievances concerning black mold against defendant Rossi and the ODOC Director (Colette Peters), as well as unnamed medical and physical plant staff. Plaintiff initiated, but did not complete, a grievance against Rossi. First Decl. Grievance Coordinator, ¶ ¶ 20-21, 38; Att. 6. Rossi should be dismissed without prejudice for failure to exhaust administrative remedies.

---

[1] Decl. Grievance Coordinator, Attachment 4.

Page 4 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

### C. Peters and Blewett should be dismissed for lack of personal involvement.

To state a claim under § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Moreover, to the extent that Plaintiff is proceeding under a *respondeat superior* theory, it is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citation omitted); *Monell v. Dep't of Soc. Serv.s of City of New York*, 436 U.S. 658, 691-94 (1978). And "[b]ecause vicarious liability is inapplicable to * * * § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Id.* (emphasis added).

A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may attach where plaintiff presents evidence that a supervisor is liable, in his individual capacity, for his own culpable action or inaction in the training, supervisor, or control of his subordinates; for his knowledge of and acquiescence in the unconstitutional conduct of others; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202-1208 (9th Cir. 2011); *see also Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) ("a prison administrator can be liable for deliberate indifference to a prisoner's medical needs if he 'knowingly fail[s] to respond to an inmate's requests for help."); *Farrar v. Peters*, No. 6:15-CV-00952-KI, 2016 WL 3156311, at *8 (D. Or. June 3, 2016), *appeal dismissed* (July 21, 2016) ("plaintiff must show the prison administrator was involved in the decision to deny the requested medical service or had control over the medical care given to plaintiff, and knew of an excessive risk to plaintiff's health caused by the denial of service.")

Page 5 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
          VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Responding to administrative review is not enough to constitute personal involvement. *Madrid v. Dep't of Corr.*, No. 1:14-CV-00516-AWI, 2015 WL 4493593, at *5 (E.D. Cal. July 23, 2015) ("plaintiff cannot pursue any claims against staff relating to their involvement in the administrative review of his inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient."). *Compare Vogelfang v. Capra*, 889 F. Supp. 2d 489, 503 (S.D.N.Y. 2012) (an officer tasked only with reviewing an administrative determination is not "personally involved" even if the underlying determination implicates a plaintiff's constitutional rights), *citing Odom v. Calero*, No. 06–cv–15527, 2008 WL 2735868, at *7 (S.D.N.Y. July 10, 2008) ("affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983."); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (noting that denial of a grievance is not sufficient for a § 1983 claim.)

Here, even if the supervisory official is made aware of mold after the fact, that does not create a reasonable interference that they knew or should have known that ODOC policies were constitutionally inadequate. Where there is no evidence of the supervisory defendant on actual or constructive notice of the risk of constitutional injury, there is no personal involvement. Neither Peters (Director of ODOC) nor Blewett (TRCI Superintendent) were personally involved in care, maintenance, or cleanliness of plaintiff's showers. Decl. Stark, ¶ ¶ 5-6. Although Blewett responded to two grievances by plaintiff concerning the incidents at issue, (*see* Decl. Grievance Coordinator), but it is well-established that responding to administrative review does not constitute personal involvement.[2] Consequently, Peters and Blewett must be dismissed for lack of personal involvement.

---

[2] See *Madrid, Vogelfang,* and *Joyner* above.

Page 6 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

**III.   Plaintiff fails to state an Eighth Amendment claim**

Plaintiff alleges deliberate indifference to a serious medical need; namely, his exposure to black mold.  Dkt # 96, ¶ ¶ 112-124. The adult in custody must make an "objective" showing of a deprivation serious enough to violate the Eighth Amendment. *Id*. The objective inquiry requires a showing that the inmate was deprived of something "sufficiently serious," such that he has been deprived of the minimal civilized measure of life's necessities. *Foster*, 554 F.3d at 812; *Watison v. Carter*, 668 F.3d 1108, 1112 (9-4 Cir. 2012). For the objective component, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Supreme Court has noted that "the length of confinement cannot be ignored...A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565 2571, 57 L.Ed.2d 522 (1978). *Cf. Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir.1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from an overflowed toilet in his cell). Shower mold is a far cry from exposure to several days of raw sewage from an overflowing toilet. Only substantial deprivations can satisfy the objective element because, as the Supreme Court has made clear, "the Constitution does not mandate comfortable prisons;" indeed, those that house persons convicted of serious crimes "cannot be free from discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  To the extent that prison conditions "are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 348.  Even conditions that inflict pain and discomfort do not transgress the Eighth Amendment absent a showing that those conditions are unnecessary

Page 7 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
          VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

or grossly disproportionate to the severity of the crimes warranting imprisonment. *Id*. (housing two inmates in a 63 square foot cell is not cruel or unusual).

### 1. No objective showing of a constitutional deprivation

ODOC inspected the showers and found soap scum and hard water stains. Dkt # 87, Decl. Stark, Att. 2, p. 1. Upon inspection, Stark "did not visually see or otherwise note anything that would appear to present a health risk. Cleaning produces are regularly provided to each housing unit to ensure that the cleanliness of the showers, as well as the entire unit, is maintained." *Id.*. Stark also noted that ODOC staff assigned to plaintiff's housing unit "reported hearing no complaints for several months about the condition of the Unit 2 showers." *Id*. On this record, plaintiff fails to state a claim of deliberate indifference, because he cannot show deprivation of the minimal civilized measure of life's necessities. Foster, 554 F.3d at 812; *Watison*, 668 F.3d at 1112. Without more, his Eighth Amendment claim must be dismissed.

### 2. Plaintiff received appropriate medical treatment for respiratory symptoms

Plaintiff claims he experienced "sore throat, coughing, lung depletion, sneezing allergy type symptoms, wheezing and respiratory type symptoms". Dkt # 96, ¶ 116.[3] Plaintiff must present evidence which would be admissible at trial to establish failure to treat a serious medical need. Mere disagreement with course of treatment is not enough. Mere difference of medical opinion does not establish deliberate indifference. *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002). Furthermore, difference of opinion between the treating physician and prisoner about the appropriate course of treatment does not support an Eighth Amendment claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Franklin v. Ore., State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981). The inmate must show that the chosen course of treatment was

---

[3] Plaintiff informed ODOC via grievance that that he had "been complaining of respiratory issues to Medical, The Medical dept. Provider prescribed me Albuterol upon further study I've found that my respiratory issues could be sinusitis as my complaints to medical include complaints of pain, coughing, wheezing and respiratory allergy type symptoms. Medical has failed to treat, and or test me, while advising me to purchase Loratadine." Decl. Eynon, ¶ 32, citing Att. 9.

Page 8 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

"medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058.

Here, ODOC Registered Nurse Faulstich conducted a review of plaintiff's medical file in response to plaintiff's grievance of respiratory symptoms allegedly caused by exposure to shower mold. Second Decl. Grievance Coordinator, Att. 9, p. 7. According to RN Faulstich, plaintiff has a medical history of asthma and chronic obstructive pulmonary disease (COPD) predating the alleged mold exposure. *Id*. RN Faulstich found that

> You have not presented any additional symptoms that would indicate other than exacerbation of either condition. The treatments prescribed to you; albuterol and Zyrtec (in place of Loratidine not available from canteen at present) were prescribed by consult with the Provider. Providers are attempting to see patients as the current health restrictions/precautions will allow, but are essentially still limited to urgent/emergent conditions beyond trying to see those who had to be cancelled previously. Nurses are capable of assessing very effectively and consulting with Providers to assure needs are met. I find you have been seen, assessed and treated appropriately as indicated, the Provider will see you as indicated.

*Id*. Records show plaintiff being scheduled to be seen by medical staff *the day after* reporting breathing issues. Second Decl. Grievance Coordinator, Att. 9, p. 14. ODOC Deputy Medical Director Dr. Roberts opined: "Documentation confirms you are being seen and treated appropriately for the symptoms you have referred to in your grievance appeal." Att. 9, p. 3. The grievance appeal concerned plaintiff's asthma, COPD, and exposure to shower mold. Att. 9, pp. 4-5. On this record, two medically-trained professionals—RN Faulstich and Dr. Roberts—found that plaintiff received medically appropriate care for his symptoms. Plaintiff was scheduled to be seen promptly after reporting symptoms and received prescription medication (albuterol and Zyrtec). Plaintiff received appropriate care. His disagreement with the medical professionals' chosen course of treatment is not enough to constitute deliberate indifference.

    3.    **No subjective showing of defendants acting with the culpable mental state regarding possible shower mold**

The adult in custody must make a "subjective" showing that the prison officials acted with culpable mental states. *Johnson*, 217 F.3d at 731. As this Court pointed out in its prior

Page 9 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Opinion & Order: the "failure to act, meanwhile, "must be a result of conduct that is more than negligent" and "involve[] an element of deliberateness." Id. Failure that is merely "attributable to bureaucratic slippage," does not amount to deliberate indifference. Dkt # 46, p. 14, *citing Duvall v. County of Kitsap,* 260 F.3d 1124, 1139 (9th Cir. 2001). Here, in the light most favorable to plaintiff, ODOC promptly cleaned the showers after plaintiff brought it to ODOC's attention. Namely, plaintiff told ODOC: "I've just found black mold in Unit 2 showers and **the officer is having it cleaned**." (Emphasis added). Decl. Eynon, Att. 9, p. 14. Willis recalls directing an orderly to clean the showers in order "to be proactive and precautionary because there was a black substance in the showers which I thought was concerning."[4] Willis arranged for the orderly to use bleach to clean the showers.[5] There is undisputed evidence of ODOC cleaning the showers with bleach after plaintiff reported potential mold. This is not deliberate indifference.

The Physical Plant Manager inspected the showers (Dkt # 2-1, p. 6), and told plaintiff about ODOC's stepped-up efforts to maintain cleanliness in light of COVID-19 and encouraged plaintiff to report any medical symptoms:

> Cleaning products are regularly provided to each housing unit to ensure that the cleanliness of the showers, as well as the entire unit, is maintained. Additionally, during the current virus concerns of covid-19, effective April 14, 2020, bleach has been provided to all housing units as an additional cleaning agent. Housing unit staff have reported hearing no complaints for several months about the condition of the Unit 2 showers. As a reminder, anytime you experience an Illness or injury, or have questions about your wellness, you are encouraged to contact Health Services. Routine care can be accessed through Communication Forms. Illnesses can be addressed through sick-call signups. Acute health concerns can be addressed anytime by contacting a staff member for help."[6]

There is no evidence to deliberately exposing plaintiff to shower mold because, as Stark pointed out, staff had not received any complaints for "several months about the condition of the Unit 2 showers." But there is evidence of ODOC promptly addressing plaintiff's concerns by clearning the showers, adding bleach to cleaning materials, and promptly schedule plaintiff to be seen by

---

[4] Attachment 1, Willis Request for Admission, p. 2.

[5] Attachment 2, Willis Response for Interrogatories, p. 4.

[6] Dkt # 2-1, p. 23.

Page 10 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

medical staff. There is no evidence of a *deliberate* disregard to an *excessive* risk to plaintiff's health by the named defendants. This claim fails for lack of a genuine issue of material fact.

**IV.   Plaintiff fails to state a claim under the Fourteenth Amendment.**

Plaintiff alleges violations of the Fourteenth Amendment by "originally denying the grievance TRCI 2020-03-148 then accept it afte a period of time, [in order to] intentionally… delay, hinder, stymie, chill Mr. Easton's right to access the court for redress of grievances.. Dkt # 96, ¶¶ 127-131. Plaintiff completed the grievance review process for grievance TRCI-2020-03-148, (Second Decl. Eynon, ¶ 19), so plaintiff cannot show that he was deprived of the opportunity to grieve.

Plaintiff also alleges that grievance rules prohibiting multiple grievances for a single incident and requiring separate grievances for separate employees violate his right to due process under the Fourteenth Amendment. Dkt # 2, ¶ 114. "[P]risoners do not have a 'constitutional entitlement to a specific prison grievance procedure.'" *Fairley v. Shelton*, 664 Fed. Appx. 616, 617 (9th Cir. 2016) (citation omitted) (holding that the trial court properly granted summary judgment to a prison official against an inmate's claim alleging that the official improperly denied his grievance). A procedural due process claim has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (1993). To establish a due process violation, a plaintiff must first prove a deprivation of a constitutionally protected right. *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 428 (1982). Inmates have "no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"). For all these reasons, plaintiff fails to state a claim under the Fourteenth Amendment.

Page 11 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

## V. Plaintiff fails to state a claim under the First Amendment.

Plaintiff once again alleges the grievance rule prohibiting adults in custody from filing multiple grievances for a single incident (OAR § 291-109-0140(5)) and the grievance rule prohibiting adults in custody from grieving multiple ODOC employees in a single grievance violate his First Amendment rights. Dkt # 96, ¶ ¶ 125-126. Plaintiff claims "this rule is being abused by the defendant's that have constantly chilled the plaintiffs exercise of his First Amendment rights, and these actions do not reasonably advance a legitimate correctional goal." Dkt # 96, ¶ 90. Plaintiff still fails to state a claim of First Amendment retaliation.

To prevail on a claim under 42 U.S.C. § 1983 for First Amendment retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. *Barnett v. Centoni*, 31 F.3d 813, 815 16 (9th Cir. 1994) (per curiam). There are five elements that a plaintiff must establish in order to make out a First Amendment retaliation claim: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate (3) engaged in protected conduct; (4) the adverse action chilled the inmate's exercise of his First Amendment rights; and (5) the adverse action did not serve a legitimate correctional goal. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567-58 (9th Cir. 2005)). "The nature of a retaliation claim requires that it be 'regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Banks v. Oregon*, Case No. 2:12-cv-01651-MC, 2014 WL 1946552, *3 (D. Or. May 12, 2014) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

This Court may take judicial notice of the fact that ODOC administrative rules apply across ODOC to all adults in custody. *See generally* OAR § 291-190. In applying the five elements of First Amendment retaliation, there is no genuine issue of material fact. First, Plaintiff cannot show how denying grievances for non-compliance constitutes an adverse action

Page 12 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

for First Amendment purposes. Second, plaintiff cannot present any evidence showing an adverse action taken *because of* protected conduct. To the contrary, plaintiff's own exhibits show ODOC denying grievances for the explicit reason of failure to follow the OARs. Third, plaintiff engaged in protected conduct by pursuing grievances. Fourth, the action of denying grievances for non-compliance did nothing to chill plaintiff's exercise of his First Amendment rights. Plaintiff proceeded to file several grievances and pursue legal remedies.[7] Fifth, the action of denying grievances for non-compliance served the legitimate correctional goal of enforcing well-established departmentwide rules. Plaintiff fails to state a claim under the First Amendment.

## VI. ADA Claim

### 1. Failure to exhaust administrative remedies for the ADA Claim

The PRLA, 42 U.S.C. § 1997e(a), requires that all inmates exhaust available administrative remedies before filing a federal lawsuit under any federal law, including the

---

[7] *See Sealey v. Busichio*, 696 F. App'x 779, 781 (9th Cir. 2017) (holding that the plaintiff's evidence of alleged retaliation for filing grievances, including destructive and frequent cell searches, shortened visitation times, and less time to shower and move between locations, was insufficient to create an issue of material fact to demonstrate a fear of retaliation, especially where the plaintiff "continued to file a stream of complaints in kites" which "somewhat weakens the objective basis for his contention that he was deterred here from using the normal grievance process"); *see also Carter v. C/O McNitt*, No. 2:17-cv-00888-JO, 2020 WL 2844445, at *3 (D. Or. June 1, 2020) ("Plaintiff's submission of more than forty grievances at Snake River between 2015 and 2017 shows that the alleged threat of retaliation would not have deterred him from filing grievances about the two alleged incidents in late 2015."); *Lepesh v. Peters*, No. 2:17-cv1135-MO, 2019 WL 4674491, at *4 (D. Or. Sept. 25, 2019) (holding that despite the plaintiff's allegations that the defendants retaliated against him for filing grievances by firing him from his assigned job and sending him to segregation, "the evidence in the record showing that [the plaintiff] filed grievances and made verbal complaints after his . . . termination undercuts his claim that his belief that prison officials would retaliate against him for filing grievances rendered the grievance system unavailable"); *Carter v. Shelton*, No. 18-cv-02035-PJH, 2019 WL 2929792, at *5 (N.D. Cal. July 8, 2019) (holding that the plaintiff "failed to meet his burden in demonstrating that the threat of retaliation made administrative remedies unavailable" where he filed fourteen administrative appeals during "the time frame during which plaintiff alleges he could not file an appeal due to the threat of retaliation"); *Heilbrun v. Villanueva*, No. 3:14-cv1706-SI, 2017 WL 2432152, at *7 (D. Or. June 5, 2017) (finding that the plaintiff did not make a sufficient showing that threats deterred him from filing grievances where he "filed numerous, often duplicative grievances" and "continued to file grievances for months [after the alleged threats]"); *Pelayo v. Hernandez*, No. C 13-3618 RMW (PR), 2015 WL 4747831, at *8 (N.D. Cal. Aug. 11, 2015) ("Taking all the facts together, the court concludes that plaintiff has not sufficiently alleged that he was 'actually deterred' from filing a grievance about defendant's retaliation.").

Page 13 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

ADA. At ODOC, this administrative remedy takes the form of a discrimination complaint under OAR § 291-106. Specifically, an inmate may file a discrimination complaint if he believes he has been subjected to unlawful discrimination on the basis of disability. OAR § 291-106-0060(1). Plaintiff's complaint history shows that he has filed discrimination complaints in 2017, 2018 and 2019, but he has not filed any discrimination complaints in 2020. Second Decl. Grievance Coordinator, Att. 4, pp. 1-4. This proves that plaintiff knew he could file a discrimination complaint and simply chose not to do so. Accordingly, plaintiff has not exhausted administrative remedies for his ADA claim. Without more, his ADA claim should be dismissed without prejudice.

### 2. State defendants did not exclude plaintiff or deny plaintiff the ability to shower.

To prevail on an ADA claim, plaintiff must show that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (*quoting Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as am. on denial of reh'g en banc* (Oct. 11, 2001).

This Court construes Eaton's ADA claim as one against Stark, Darcy, Blewett, Enyon, and Rossi in their official capacities. Dkt # 46, fn 1. Stark physically inspected the showers and found no evidence of mold. As Stark was Darcy's superior, there was no need for Darcy to inspect the showers, especially after an orderly had cleaned the showers with bleach. Blewett had no personal involvement. Eynon and Rossi were Grievance Coordinators (Dkt # 96, ¶ ¶ 12-13), which are "responsible for communicating directly with the AIC about grievance related matters" (OAR § 291-109-0110(15)), not shower facilities or medical care. ODOC's medical staff reviewed plaintiff's medical history, addressed his concerns in writing, scheduled him for a

Page 14 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

medical appointment, and prescribed medication. This record does not show exclusion or denial of plaintiff's ability to shower.

      3.      **No evidence of exclusion or denial of shower use by reason of plaintiff's disability**

Stark told plaintiff that ODOC had not received any complaints about the cleanliness of the showers for the last several months. Dkt # 87, Decl. Stark, Att. 2, p. 1. That fact, coupled with the efforts to clean the showers with bleach, show no effort to exclude or deny plaintiff from accessing showers by reason of plaintiff's disability.

To the extent plaintiff complains about the adequacy of medical treatment from exposure to shower mold, that is not an ADA claim. It is well settled that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010); *Marlor v. Madison Cty.*, Idaho, 50 F. App'x 872, 873 (9th Cir. 2002) (affirming the district court's grant of summary judgment on the plaintiff's ADA claim for failure to provide medical equipment because the plaintiff "offered no comparison with other inmates' medical care to demonstrate that he was denied access to medical supplies or treated differently by reason of his disability") (emphasis in original); *see also Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006) ("When the decision being challenged is simply a reasoned medical judgment with which the patient disagreed, it is more appropriate for the patient to turn to state medical malpractice law, not the ADA.") (citation, alterations, and quotation marks omitted); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that a prison does not violate the ADA by "simply failing to attend to the medical needs of its disabled prisoners" because the "ADA does not create a remedy for medical malpractice"). This Court pointed out that

> under § 12132, discrimination by reason of one's disability is discrimination that is either intentional or the product of deliberate indifference. Updike, 870 F.3d at 950. To allege deliberate indifference, a plaintiff must allege facts plausibly showing that the defendant both (1) had "knowledge that a harm to a federally protected right substantially likely," and (2) "failure[d] to act upon that . . . likelihood." Duvall, 260 F.3d at 1139. When a plaintiff informs the public entity of the needs prompted by his disabilities, he satisfies

Page 15 -   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
    VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

the first prong. Id. The failure to act, meanwhile, "must be a result of conduct that is more than negligent" and "involve[] an element of deliberateness." Id. Failure that is merely "attributable to bureaucratic slippage," does not amount to deliberate indifference. Id.

Dkt # 46, p. 14. There was no failure to act here; both correctional staff and medical staff sprung to action and addressed plaintiff's concerns of mold. For all these reasons, plaintiff's ADA claim fails.

DATED December  9 , 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


*s/ Vanessa A. Nordyke*
VANESSA A. NORDYKE #084339
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4792
Vanessa.A.Nordyke@doj.state.or.us
Of Attorneys for Defendants Blewett, Darcy, Eynon, Rossi, Stark, Maney

Page 16 - STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
VAN/cbh/10416092-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

# CERTIFICATE OF SERVICE

I certify that on December  9 , 2021, I served the foregoing STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Aaron Dale Eaton | ___ HAND DELIVERY |
| SID #14997682 | ___ MAIL DELIVERY |
| Snake River Correctional Institution | ___ OVERNIGHT MAIL |
| 777 Stanton Blvd. | ___ TELECOPY (FAX) |
| Ontario, OR 97914 | ___ E-MAIL |
|     Plaintiff Pro Se | _X_ E-SERVED PURSUANT TO SRCI STANDING ORDER NO. 2019-12 |
| | |
| Scott G O'Donnell | ___ HAND DELIVERY |
| Trent Andreasen | ___ MAIL DELIVERY |
| Keating Jones Hughes PC | ___ OVERNIGHT MAIL |
| 200 SW Market St. Suite 900 | ___ TELECOPY (FAX) |
| Portland, OR 97201 | ___ E-MAIL |
|     Attorney for Defendant Lecloux | _X_ E-SERVED |

    *s/ Vanessa A. Nordyke*
VANESSA A. NORDYKE #084339
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4792
Vanessa.A.Nordyke@doj.state.or.us
Of Attorneys for Defendants Blewett, Darcy,
    Eynon, Maney, Rossi, Stark and Oregon
    Department of Corrections

Page 1 -   CERTIFICATE OF SERVICE
    VAN/cbh/32158614

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792