Aaron D. Eaton
# 14997682

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

**AARON DALE EATON,**
**PLAINTIFF**

**CASE NO.2:20-cv-01251-SI**

**V**

**Two Rivers Correctional Institution**
**Grievance coordinator Eynon; et. al.**
**IN THEIR INDIVIDUAL AND OFFICIAL**
**CAPACITIES AS APPROPRIATE,**
**DEFENDANTS.**

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S SUMMARY JUDGMENT**
**RESUBMITTED WITH ADDITIONS**

### GREATINGS TO THE COURT AND TO THE HONORABLE JUDGE

Plaintiff, Pro-se, responds to the defendant's motion. Their motion is without merit and should be dismissed. This response is based upon the following exhibits, attachments, declarations, admissions made by the defendants, and eye witnesses to the issues at hand, the contents in the court's file in this matter and all proceeding pleadings, along with the plaintiff's verified complaint, and a Dr. White expert declaration.

Plaintiff is hereby requesting that this court include all prior documents that was filed with the first response as fully set forth and incorporated into this response.

# INTRODUCTION

Defendant's have moved this court for summary judgment. Defendant's will attempt to show that plaintiff failed to exhaust Administrative Remedies, on some defendants. So now the burden shifts to the plaintiff to come forward with evidence showing exhaustion, on those defendants. Plaintiff believes this allegation of failed exhaustion, fails on the face, as plaintiff submitted hundreds of

documents to this court with the original filing, in those documents are at least four exhausted grievances, which plaintiff will show encompasses all defendant's and any other defendant, yet to be named. Including Bob Addams who directly advised TRCI not to have a mold specialist test for molds after it was suggested by defendant A. Eynon in an email. Defendants also claim that Plaintiff fails to state a claim upon which relief can be granted on all claims, this too will be shown as a false, this court is asked to take judicial notice of the rule 12 b 6 motion this court has already ruled on (see opinion and order Dec. 15th 2020 ), which alleges the same claim of failure to state a claim.

Exhibits, in the form of photos, declaration, affidavits, request for admissions, interrogatories, and emails will accompany these objections and the response to the motion for summary judgment.

This court will learn that plaintiff was diagnosed with Asthma/ COPD back in 2005 and upon learning of these issues plaintiff stopped almost every harmful activity, so much so that upon plaintiff's arrival to ODOC plaintiff's medical records show his lungs were working well enough that the intake provider's, noted under lungs/breathing issues, a zero, meaning no issues, this note was in 2017. Then this court will read documents from individuals that are eye witnesses to the plaintiff's ability to jog 3 to 5 miles several times a week, **( see declaration of Scott Frazier attached )** and plaintiff's breathing was still well enough to talk to others clearly.

Then in 2019 when plaintiff was moved to unit two for incentive housing ( honor housing ) plaintiff's ability to jog started to decrease fast, there was molds discovered in the unit showers ( this mold was so bad that it was growing up the walls you could smell it from about five feet away and when the orderlies tried to clean it the mold would come back in a day or two) and plaintiff started asking medical for help due to having trouble breathing, the medical dept. looked and discovered that plaintiff had in the past Asthma COPD so abuteral was prescribed, after plaintiff complained a lot more, plaintiff was prescribed a lung steroid, plaintiff continued to complain that his breathing was not

good, and no further attempt to diagnose plaintiff's breathing issues have been taken fact plaintiff just asked to have his mold toxicity levels tested and told " we do not test for mold" ( see communication, dated 6-11-21), here is a question for the jury, how could the plaintiff have been treated with the community standard of care when testing for exposure has been denied? Plaintiff notified every dept. he could, of the mold including medical asking if the mold could be the issue, plaintiff was consistently told that the mold and his breathing issues were unrelated.

Then plaintiff and other AIC's received facts about mold sheets and learned that all of the symptoms plaintiff and the others were having could be due to toxic mold exposure, this court will read a written declaration from Robert J Byers sid. 10311965 of how he was diagnosed with lung crystallizing which according to a pulmonary specialist most likely is due to environmental mold exposure.

Plaintiff has secured a medical doctor, a Dr. White, that will provide this court with a declaration on what should have been the standard of care for plaintiff and any other potential mold exposure victim, especially once there was a confirmed case of mold exposure from the same unit and time period. This declaration will also state the well established effects of molds on the respiratory system, along with other well known facts.

This court is also asked to acknowledge the core principles of human rights, those being that everyone including incarcerated individuals are entitled to the things they need to survive, and nobody should be discriminated against for availing themselves of these human rights, in any form, and plaintiff's ability to breath properly is a basic human right.

There will be hundreds of documents for this court to go over, taking time and mental energy, plaintiff asks this court to take as much time as needed with the knowledge that plaintiff has not had the standard time allotted for most discoveries in court, in this district.

# Plaintiff will now start to present his case.

STANDARD OF REVIEW

## A. Summery Judgment

To prevail on a motion for Summery judgment, the parties must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Albino v. Baca, 747 f.3d 1162, 1166 (9th Cir. 2014) " If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summery judgment under rule 56." the Court must Construe the evidence and draw all reasonable inferences in light most favorable to the non-moving party. Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party will bear the burden of proof at trial. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.C.t 2548, 91 L.Ed.2d 265(1986).

The burden of persuasion imposed on a moving party by Rule 56 is a stringent one. ^ moore 56.15[3], pp. 56-466;10A Write, Miller and Kane § 2727, p. 124. Summary Judgment should not be granted unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255,106 S.Ct. 2505---, 91 L.Ed.2d 202 (1986). And any doubt as to the existence of a genuine issue for trial should be resolved against the moving party, Adickes v. S.H. Kress & Co.,398 U.S. 144, 158-159,90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).

In determining whether a moving party has met its burden of persuasion, the court is obligated to take account of the entire setting of the case and must consider all papers of record as well as any material prepared for this motion. 10A Write, Miller and Kane § 2727, p. 44; see, e.g., Stepanischen v.

Merchants Despatch Transportation Corp., 722 F.2d 922,930 (CA 1 1983 ); Higgenbotham v. Oscher

Foundation Hospital, 607 F.2d 653, 656 ( CA 5 1979).

As explained by the Court of Appeals for the third circuit in re Japanese Electronic Products

Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "[i]f...

there is any evidence in the record from any source from which a reasonable inference in the [ non-

moving part's ] favor may be drawn, the moving party simply cannot obtain a summary judgment...."

723 F2d, 258.

Once the moving party has attacked whatever evidence—if any—the non-moving party

purports to rely upon, the burden of production shifts to the non-moving party, who must either (1)

rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence

showing why further discovery is necessary as provided in Rule 56(f). 10A Write, Miller and Kane §

2727, p. 138-143.

Summary judgment should be granted if the non-moving party fails to respond in one or more

of these ways, or if, after the non-moving party responds, the court determines that the moving party

has met its ultimate burden of persuading the court that there is no genuine issue of material fact for

trial. See, e.g., First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575

1592, 20 L.Ed.2d 569 (1968).

Where the non-moving party in a summery judgment motion is a pro-se litigant, the court must

consider as evidence in opposition to summery judgment all of the non-moving parties contentions set

forth in a verified complaint or motion; Plaintiff 's complaint is a verified complaint and there will be a

verification attached to this for the motions set forth in this opposition/motion. A verified complaint is

to be treated as an affidavit for summery judgment purposes, Schroader v. McDonald, 55 F.3d 454 (9th

Cir. 1995) all the statements made in the verified complaint are made from personal knowledge Hexcel

Corp. v. Ineos Polymers, Inc., 681 F.3d 1055 ( 9th Cir. 2012).

When a non-moving party relies on his own affidavit to oppose a summery judgment motion, the affidavit may not be conclusionary or unsupported by factual data.

But plaintiff contends that there are genuine issues of material fact for trial as outlined in his verified complaint and now the court is obligated to take account of the entire setting of this case. This court must consider all papers of record as well as any materials prepared for the motion.

## EXHAUSTION OF REMEDIES FOR ALL DEFENDANTS
## LEGAL PRECEDENT

Defendant's move to dismiss plaintiff's entire case because they claim that plaintiff failed to Exhaust Administrative Remedies on some individuals this simply is not plaintiff's responsibility. OAR 291-109-0210(1)(a) is very clear " (1) An AIC may only request review of one matter, action, or incident per grievance. (a) **If multiple staff or functional units are involved in a single incident, each _should_** ( this word implies an option ) **be included in a single grievance** and one grievance response will be prepared from the most appropriate individual **at the discretion of the institution grievance coordinator.** The wording here is clear the responsibility rest with the grievance coordinator. For the defendant's to try and push their responsibilities off on plaintiff is frivolous and a waist of this courts time. To add to this, plaintiff did in fact file additional grievances just to be safe, ( see decl. Of Eynon witch was attached to defendant's motion for summary judgment ) and has continued to for a couple of reasons, (1) to show this court that the issues are continuous, (2) new problems medically keep coming up, which plaintiff believes come from the exposure to environmental molds, (3) to show that the defendant's keep violating plaintiff's rights held under the Constitution. Here is a list of the grievances that plaintiff has filed, **(see verified complaint Pg 6 para.37. Pg 7 para. 40,46. Pg 8 para. 55.)** these grievances could have been sent to any one of the named defendants for response yet the grievance coordinator chose who would respond, plaintiff has a reasonably expectation of TRCI to obey it's own Div. 109 and that is what plaintiff did. Further plaintiff added a

disclaimer to his initial grievance TRCI-2020-03-148 which directs the grievance to any person known or unknown to plaintiff, ( **attached grievance TRCI-2020-03-148** )

When an administrative process is susceptible of multiple reasonable interpretations, ( like OAR-291-109-0215 (1) An AIC cannot have more than four active complaints (grievances, discrimination complaints, or appeals of either) at any time. Any grievance or appeal submitted that exceeds that limit will be found to be an improper use of the grievance review and discrimination complaint review systems and returned to the AIC with a statement of the rule.

OAR-291-109-0215 (2) An AIC cannot submit more than a combined total of four initial AIC grievances and discrimination complaints per calendar month.

291-109-0210. Permissible Grievance Issues, (1) An AIC may only request review of one matter, action, or incident per grievance.

These §(s) clearly contradict each other which is why ) Congress has determined that the inmate should err on the side of exhaustion. But when a remedy is, in Judge Carnes's phrasing "unknowable"-- so that no ordinary prisoner can make sense of what it demands ( see emails showing that even the grievance coordinator was confused about the proper procedures, emails attached)-then it is also unavailable. See Goebert v. Lee County, 510 F.3d 1312,1323 (C.A. 11 2007) ;Turner v. Burnside, 541, F.3d 1077, 1084 (C.A. 11 2008); ( Remedies that rational inmates [136 S.Ct 1860] cannot be expected to use are not capable of accomplishing their purposes and so are not available)

When the Dept. of corrections violate their own rules or bend them, as DOC did in grievance # TRCI 2020-03-148, when they denied the grievance, then after plaintiff's subsequent appeal, which is not allowed under Div. 109, the Dept. of corrections violated their own rules by accepting the grievance after they originally denied it, plaintiff should be deemed exhausted on that grievance, because if plaintiff would have violated the rules plaintiff would have been deemed to have failed to exhaust.

PLRA should have to be followed, by not just by the plaintiff, but by the dept. of corrections as

well. The institutions grievance procedures in OAR-291-109-0230(1)(g) A denied initial grievance or grievance appeal cannot be appealed, is plaintiff the only one that is required to follow Div. 109 ? DOC bent the rule to allow plaintiff's appeal to the denial of the grievance, even though the grievance appeal said denied with a stamp,( see previously attached grievances with first response, to original summary judgment motion filed by the defendant's) the fact is the appeal was "granted" because plaintiff got precisely what plaintiff asked for as the outcome and that was that the denial be reversed and the original grievance be "accepted" and that is what happened.

Espinal v. Goord, 588 F.3d 119 ( 2nd Cir. 2009) Where description of misconduct in grievances reasonably identified parties to whom claim related, PLRA exhaustion requirement held inapplicable in law suit. ( The description in plaintiff's grievances did identify )

Plaintiff contends that since DOC violated their own OAR-291-109-0230(1)(g) Doc should have to "wave" the grievance procedures for that grievance.

Plaintiff would asks this court to take judicial notice that the Attorney's for Defendant Lecloux are not using their affirmative defense of exhaustion, and this lack of said defense should be a sign to this court that they believe, that plaintiff did exhaust available remedies on all defendant's.

For the above reasons plaintiff would argue that exhaustion did in fact take place and the defendant's argument is frivolous.

## LEGAL PRECEDENT IN SUPPORT OF EXHAUSTION
## PLAINTIFF'S INTERPOLATIONS WILL BE BOLDED

Jones v. Bock, 549 U.S. 199, 219,127 S.Ct. 910 (2007) " holding that prisoners could not be required to name in their grievance all the defendant(s) they later sue where the grievance rule did not so require"( **Div. 109 places the burden solely on the grievance coordinator. see above bold-ed OAR)**

Andres v. Marshal, 867 F.3d 1076 (9th Cir.2017) "When prison officials fail to respond to a

prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted...." ( **Plaintiff filed TRCI-2020-03-148, 3-20-2020 final appeal response sent to plaintiff 11-2-2020, a total of 196 days, ODOC Div. 109 0only allows for a max time if added up correctly, counting allowed for time extensions, of 189 days. If plaintiff would to violate the Div. 109 time allowed then plaintiff would be deemed to have failed to exhaust, yet ODOC consistently fails to follow Div. 109 and plaintiff is stopped from submitting any other complaints while ODOC takes and abuses the rules. Plaintiff does realize this is only a few days over, but if the lateness was plaintiff then defendant's would argue that plaintiff was not in compliance.** ) Soto v. Sweetman, 882 F.3d 865 (9th Cir. 2018) Exhaustion of Administrative Remedies is not defined by the PLRA "but by the prison grievance system itself" ( **is plaintiff the only one held to the rule of law/OAR** )

Olney v. Hartwig, 2007 WL 438781,*1 (D. Or. ,Feb. 6Th 2007) citing Oregon policy to require separate grievances for each responsible staff member. ( **This has been changed AIC(s) now put the functional units and or individuals all on one grievance and the grievance coordinator job duties are to forward to the appropriate staff member. If the defendant's wish plaintiff to name each person, later mentioned in litigation, this change in procedures would need to be reversed and re-implemented.** )

Lyerly v. Phillips, 2005 WL 1802972, *2 ( S.D.N.Y. July 29th 2005) Holding that complaints of exposure to second hand smoke sufficiently exhausted without detail of ... or names of the culprits.

Cutler v. Correctional Medical Services, WL 339760 *6 (D. Idaho Jan.22[nd] 2010) " The simple and more prudent way to interpret the grievance process is that once an inmate has availed himself of all the grievance procedures as to his problem, he is free to sue any state actor who could have liability under the provision of law governing his cause of action"

Austin v. Correctional Medical Services,Inc.,2008 WL 4426342*5 (W.D. Mich. Sept.26[th] ,2008) Grievance against the medical service dept. held more that sufficient to put on notice any and all

individuals and entities involved with providing health care to prisoners at MCF" ( **here plaintiff grieved the medical dept. and by rule was allowed to grieve additional dept.(s) in the same grievances as well. The rule does not say all staff and functional units must be named it says all staff and functional units <u>should be included</u> in the grievance. Must, is not optional, Should, is optional by the standard dictionary meanings of these words.**

Cutler v. Correctional Medical Services, WL 339760 *5 ( D. Idaho Jan.22[nd] 2010 ) Complaint about inadequate medical care sufficiently notified private medical provider and it's supervisory personal of allegations that provider was not preforming it's duty.

Ambriz v. Kernen, 2007 WL 214594,*6 ( E.D. Cal. 25th, Jan. 2007 ) noting that the "responses of the reviewers flesh out the circumstances of which plaintiff was complaining" finding exhaustion.

Young v. Good, 2008 WL 4816474, *4 (W.D. Pa. Nov. 4th 2008 ) Grievance identifying "food services" sufficiently identified food services supervisors, cook supervisor, and Deputy Warden who supervised food services.

**( If the defendant's want to require Adults in custody to name each person they intend to litigate then plaintiff would need an allowance in the grievance procedure to "discover" those individuals and the requirements stated in the Div. 109 would need to be changed to allow such.)** Robinson v. Johnson, 343 Fed. Appx. 778-82 ( 3rd Cir. 2009 ) holding ... One court has said that a strict name the defendant policy would require prison officials to make provisions for discovery in the grievance process.

**( The grievance rules are to be followed, if the defendant's insist on naming each defendant, that plaintiff later sues, there must be proper wording to such requirements the difference between must and should. Also the defendant's would need to add space on the grievance forms to name each defendant or allow for the defendant's to be placed on a separate piece of paper because if the plaintiff files a grievance and goes outside the spaces provided that**

grievance will be denied for not following the Div. 109 rules of staying within the designated area for the short space provided, which is only about one and a half inches for plaintiff to name each defendant, and how does plaintiff know which defendant will violate his rights ahead of time?

Under Div. 109 there is no timeline rules for what would be an "Emergency" grievance, there are no guidelines for what constitutes an emergency, the closest plaintiff can find is a sexual abuse grievance and there is to be a reply in five days, OAR 291-109-0245(7)(b) here is a question for this court, how is not breathing properly not listed as an "Emergency" grievance ? Grievance 148 took 8 months.

Riccardo v. Rausch, 375 F.3d 521 (7th Cir. 2004) Prison officials cannot hear and decide a grievance on the merits and then later seek dismissal of a subsequent lawsuit on non-exhaustion grounds for failing to strictly comply with grievance procedures. See also; Gates v. Cook, 376 F.3d 323 ( 5th Cir. 2004) Spruill v. Gillis, 372 F.3d 218 (3rd Cir. 2004) Ross v. County of Bernalille, 365 F.3d 1181 (10th Cir. 2004) Pozo v. McCaughtry, 286 F.3d 1022(7th Cir.), cert. denied,537 U.S. 949 (2002) **(Here the defendant's made several decisions based on the merits of plaintiff's grievance see all the responses to all the grievances)**

### PLAINTIFF'S RESPONCE TO DEFENDANT'S MOTION TO DISMISS MANNEY.

Defendants move to dismiss provider(s) Manney, alleging that the plaintiff failed to properly exhaust all available administrative remedies associated with Manney, This allegation is entirely misleading and is completely without merit and is a frivolous pleading. Manney is one of the health care providers at TRCI who have overseen the plaintiff's medical needs. Plaintiff made the appropriate complaint to TRCI medical. **( Pg. 4 para. 21 and  Pg. 5 para. 25,30 and  Pg. 17Para. 103 and Pg. 18 para. 109 verified complaint )** Plaintiff communicated very clearly to Manney all the symptoms plaintiff was suffering from.**( Pg. 5 para. 30 and  Pg. 16 Para. 98, 99 and Pg. 18 para. 109 verified complaint )** Plaintiff was seen by Manney on many subsequent medical appointments and was

prescribed breathing enhancers, **( Pg.16 para. 98,99 and Pg. 18 para. 109, verified complaint and prescription labels with Manney as provider)** and plaintiff continued to make the same complaints **( Pg.(s) 3 through 18, Statement of Facts and Factual Allegations verified complaint )** which should have been sufficient to alert authorities of the mold problem **( declaration of Doctor Michael C. White #4 )** Plaintiff was not receiving the medical care that would be the community standard of care **( declaration of Doctor Michael C. White #5 )** Plaintiff was suffering an onslaught of serious medical symptoms that a " band aid on a bullet hole" Albuterol inhaler was not going to fix. There are standard steps that any U.S doctor would take if they had been the provider for any person complaining of toxic mold exposure. **( declaration of Doctor Michael C. White #5 )** On 3-20-2020 plaintiff grieved " physical plant & medical" **( Pg. 6 para. 37 verified complaint and grievance #  T.R.C.I-2020-03-148, attached)** Div. 109 fully allows for the plaintiff to grieve both dept.(s) in the some grievance, which became fully exhausted on 11-2-2020.

Defendants now argue that plaintiff failed to properly exhaust Manney. This attempt to shift the burden to plaintiff is fruitless and a waist of this courts time because OAR 291-109-0225(1) is very clear. That burden rest solely on the grievance coordinator once the grievance is received, accepted and recorded, the forwarding to the appropriate staff or manager for review and response. **( Div. 109 )** Manney is exhausted and ripe for being held accountable for being deliberately indifferent, **( verified complaint Pg. 17 para.(s) 105, 106, 107, 108 and Pg. 18 para. 109 )** because it is well known that molds/mildew exposure can be hazardous to vulnerable individuals, and could cause irreparable organ damage, **( declaration of Doctor Michael C. White #7 )**

### PLAINTIFF'S RESPONSE TO DEFENDANT'S ATTEMPT TO DISMISS DEFENDANT'S DARCY, EYNON, LEMMON, ROBINSON, WILLIS.

Plaintiff was not required to grieve each defendant by the Div. 109 rules, as stated above, to now try and make it to where plaintiff must mention each defendant personally is not right and does not

conform to Div. 109 rules.

**291-109-0220 Grievance and Appeal Submission Requirements. (4) A grievance must include a complete description of the incident or issue being grieved, including date and time of the incident or issue being grieved, and the individual responsible for the incident or issue.** This is if there is only one "individual" involved in the issue, or why would there be a provision written for "multiple staff or functional units"

**291-109-0210(1)(a) is very clear " (1) An AIC may only request review of one matter, action, or incident per grievance. (a) If multiple staff or functional units are involved in a single incident, each *should* (should is optional wording) be included in a single grievance and one grievance response will be prepared from the most appropriate individual at the discretion of the institution grievance coordinator.**

Plaintiff filed multiple grievances and in those plaintiff plainly stated "known or unknown to me" this is because there was no way for the plaintiff to fit that many parties in the space provided and if plaintiff did not follow the div. 109 guidelines of staying within the provided spaces ( a space that is about 1 and a half inches) that grievance would then be properly denied for not following the div. 109 rules, so plaintiff was stuck and was not allowed the space to name each defendant.

**291-109-0220 Grievance and Appeal Submission Requirements, (3) Grievances must be legible and written within the appropriate space provided....**

Closing this no exhaustion argument out is the fact that these subsections of div. 109 are clearly written to hinder the average inmate from "knowing" the proper filing format, TRCI is twisting the meanings of the OAR's to benefit themselves and to hinder inmates, plus the space does not allow for plaintiff to provide all the defendants by name.

### PLAINTIFF'S RESPONCE TO DEFENDANT'S MOTION TO DISMISS T. BLEWETT.

Defendant's move to dismiss " Peters and Blewett " for lack of personal involvement. To state a

claim plaintiff must allege facts that show that an individual was personally involved. Barren v. Harrington 152 f3d 1193, 1194 ( 9th Cir.1998). Plaintiff has alleged personal involvement. **( see verified complaint Pg.(s) 3 through 18 Statement of Facts and Factual Allegations. )**

Moving on to defendant's motion, plaintiff is not seeking respondent superior, defendant T Blewett was dully notified of the risk of harm, **( see verified complaint Pg.9 para.61 and communications dated, 5-7-2020, 5-12-2020, 9-2-2020, and declaration of Aaron Dale Eaton )** and chose not to take and move plaintiff instead leaving plaintiff on the housing unit, that plaintiff complained was infested with molds in the showers.**(see verified complaint Pg.(s) 3 through 18 Statement of Facts and Factual Allegations. And exhibits originally filed with this court that have been asked to be incorporated into this complaint.)** defendant Blewett could have moved plaintiff with a simple email to housing assignments.

By the defendant not taking any reasonable action and choosing to leave plaintiff on the unit, the defendant chose to leave plaintiff in a known dangerous environment, which defendant admits to knowing **( see request for admissions attached, #3)**

Defendant Blewett definitely knew of the cruel conditions plaintiff was complaining about **( see Grievance Appeal Responses, TRCI-2020-03-148, TRCI-2020-04-186, TRCI-2020-05-036 and request for admissions L.T Robinson with pictures of the mold, and verified Compl. Pg.9 para.(s) 56, 57, 61 and Official letter Dated May-12-2020 From T. Blewett)** and instead of taking any action to abate the issue, defendant Blewett chose to ignore the evidence and do nothing. Taylor v. List, 880 F2d 1040, 1045 (9th cir. 1998); Ryan v. Harlan (D. Or. 2011); Rodella v. Jackson (E.D. Cal. 2011); Rodella v. Jackson (E.D. Cal. 2011)

Defendant Blewett was the Superintendent of TRCI during plaintiff's grievances and other complaints, **( see attached exhibits )** and as the Functional unit manager, defendant Blewett had complete control of all internal dept.(s) i.e. functional units of TRCI including, but not limited to, Food

Services, Maintenance, Medical, AIC Housing, and any other dept.(s) i.e. functional units, inside of TRCI. **(see Interrogatories T. Blewett #4 and other attached exhibits.)**

## PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

Whether defendant's acted with deliberate indifference in making plaintiff shower in such deplorably smelly unsanitary shower conditions for the extended period of time when prison officials knew of a substantial risk to plaintiff's serious medical need, in violation of the U.S. Constitution, this requires both an objective and subjective Component.

A. The Eighth Amendment protects an inmate from being held in conditions that cause current and future harm. Helling v. Mckinney, US 25,33(1993). To prevail under the Eighth Amendment, plaintiff must show "deliberate indifference to a serious medical need," Estelle v. Gamble, 429 US 97, 106 (1976).The deprivation suffered must be sufficiently serious, and prison officials were " deliberately indifferent" to the deprivation. Farmer v. Brennon, 511US 825, 834 (1994). Whether illness or injury demonstrates sufficient harm is vied through an objected lens. Helling v. Mckinney, US 25,36 (1993). Officials act with deliberate indifference when they: (1) have subjective knowledge of the risk or those risk are "obvious," and (2) fail to take reasonable action to abate those risk. Lemire v. Cal. Dept. Of Corrections & Rehab., 726 F3d 1062, 1078 (9th cir. 2013) ( quoting Farmer 511 US 842); Delgado v. Barns, 465 F. App' x 712-713 (9th cir. 2012). Even if an official has a strong suspicion that a risk exists- they may not ignore that suspicion or refuse to verify relevant facts. Instead- they must investigate the matter and fugue out whether a substantial risk of serious harm really exists. Farmer v. Brennon, 511 US 825, 834 (1994). The Farmer standard is not designed to give officials the motivation to "take refuge" in the zone between ignorance and actual knowledge when it is obvious that they are being deliberately indifferent.

## B.    LEGAL ARGUMENT

Here prison officials responsible for plaintiff's confinement do not have "'fair warning' that their

specific acts were unconstitutional." 946 F. 3d, at 222 ( quoting Hope v. Pelzer, 536 US 730, 741(2002)). Such conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment. Here no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house plaintiff in such deplorably, smelly, dirty, unsanitary conditions, for the extended period of time with these showers. See Hope 536 US.,at 741 ( explaining that "' general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question'" ( quoting United States v. Lanier, 520 US 259, 271 (1997))); 536 US., at 745 ( holding that [t]he obvious cruelty inherent" in putting inmates in certain wantonly "degrading and dangerous" situations provides officers " with some notice that their alleged conduct violate[s] " the Eighth Amendment).

Prison officials here at TRCI had the requisite knowledge of the substantial risk that the showers posed. This though is a question of fact that is subject to demonstration in the usual ways, [ by jury trial ] including inference from the circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.( see attached photos ) Farmer v. Brennon, 511 US 825, 834 (1994). A jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm conditions based solely on the circumstantial evidence- such as the obviousness of the conditions. Tafoya v. Salazar, 516 F.3d 912, 916-17(10ᵗʰ cir. 2008). The showers were so bad that plaintiff would not let his dog on the outside bath in that place, fact plaintiff had to clean the shower a bunch of times prior to being able to shower do to the smell, and the growth up the walls,

### C.   Plaintiff's argument

Prison Officials here at TRCI had the requisite knowledge of the substantial risk of harm that the showers posed. **(see exhibit attachments and 4ᵗʰ Amended Verified Complaint with original**

**documents filed )**

The Eighth Amendment requires that the plaintiff be "safely housed" the housing does not need to be comfortable but must be safe, the defendants assured plaintiff that the showers were safe **(see verified complaint Pg. 4 para. 24 )** and the showers appeared to be safe facially, yet upon close inspection of the showers by correctional officers Lemmon and Willis, became so concerned that they sent several emails **( verified complaint Pg. 4 para. 22 and 23. )** and was either flat out denied his request by Defendant J. Stark or the TRCI custom of, dept. blame dept. game was started. C/o Willis continued to request inspection. Physical plant manager J. Stark blamed the unit orderlies [inmates] for not cleaning the showers properly, **(see email attachment)** when in-fact the unit orderlies were the ones complaining. **(declarations from Byers, Beasley, Nolend all of which were unit orderlies or TRCI blood and body spill orderlies and have personally seen the mold and or was instructed to clean the mold from the unit showers )**

Plaintiff sent informational sheets from well established sources that bleach should not be used, **(see documents originally filed with these complaints and or amended verified complaints Pg. 15 para. 94 )** because bleach opens up the lungs allowing the toxic spores from the molds to get deep into the respiratory system. It is also well known that molds/mildews grow in dark damp environments, such as showers and institutions. **( declaration of Doctor Michael C. White #6 )** The defendants failed to properly diagnose plaintiff or, remove the plaintiff from the exposure, even after plaintiff repeatedly informed defendants of the mold exposure. **( declaration of Doctor Michael C. White #4 and#6 )** Plaintiff continued to have respiratory problems such as wheezing, coughing, tightness of his lungs **( see verified complaints Pg. 4 para. 21 )** the defendants kept blaming plaintiff's, years old asthma/copd from 05 through 08 **( medical records attached )** had gotten so much better that upon entry for this prison term the defendant's documented " 0"next to #7 on his current medical history report **( attached medical history 2017-2019, filed with original response, entered on 10-28-20212**

doc.#121)

Plaintiff moved to incentive housing in 2019 around Sept. and started noticing breathing issues again. Thinking it could be a "flair up" of asthma/copd plaintiff informed medical of his breathing issues and was given abuterol. **( see attached medical charts and prescription labels, filed with original response, entered on 10-28-20212 doc.#121, as well as verified complaint Pg.5 para. 25 )** Plaintiff was informed that unit #2 had mold in the showers, and that the molds could be the cause of the breathing issues. Plaintiff informed medical of the mold he personally found in the unit showers **( see verified complaints Pg. 5 para. 25 )** and asked if that could be aggravating his breathing issues, plaintiff was informed "no the issues are unrelated" **( see medical communication attached)** this is simply not true. **( Dr. White's declaration para.3)** Plaintiff complained over and over again and finally nurse Thurman listened to plaintiff's lungs and, plaintiff was informed that he should be on a lung steroid, because his lungs are not working properly **( attached medical communication attached, and verified complaint Pg. 17 para.103)**

Plaintiff received the steroid a while (weeks) later and was on it for 60 days then plaintiff wrote a medical communication explaining that his breathing was not better, the steroid was not working. **( medical communication attached and verified complaint pg. 17 para. 103. )** To this day plaintiff has had no more test to see if he was and or is suffering from environmental mold exposure, TRCI medical should have taken additional steps to diagnose plaintiff's breathing issues. **( declaration of Dr. White para.5.)** To this day no labs have been taken in an attempt to diagnose plaintiff with environmental mold exposure, nor has any imaging been done. ( 2-28-22 update as soon as the doctor here at SRCI Dr. Gulick was told of the exposure to environmental molds in TRCI Dr. Gulick ordered imaging which has now been done and plaintiff is going to see a pulmonary specialist for the breathing harms, also Dr. Gulick ordered a P.F.T pulmonary function test, this to has been completed and the plaintiff's ability to not breath has been very well documented, plaintiff has asked the defendant's to

Page 18 **PLAINTIFF'S RESPONSE TO DEFENDANT'S SUMMARY JUDGMENT CASE NO.2:20-cv-01251.**

produce the new evidence so plaintiff could show this court upon receipt plaintiff will provide this court with further poof. )

Fact plaintiff just asked TRCI medical to have plaintiff's " mold toxicity levels" taken by blood sample and was told that "we do not test for mold" **(attached medical communication dated 6-11-21)** the standard of care for any citizen of the U.S complaining of mold exposure would involve a blood test and imaging if the symptoms continued as plaintiff's did. **( declaration Dr. White para. 5.)**

Fact is in order to diagnose for mold exposure, TRCI should have tested plaintiff, but the defendants flat out refused to test plaintiff. Defendants state that "here plaintiff presents no evidence of a sufficiently serious harm." Plaintiff's ability to breath oxygen has been damaged because of the defendant's actions and or inaction's, plaintiff lungs have been so damaged that two different lung enhancers were prescribed and still plaintiff's lungs are not working the way they were prior to the environmental mold exposure. Further more the defendant's knew of the risk of harm as there were more than plaintiff complaining of the same types of issues. Mr. Byers and plaintiff were constantly and continuously stating over and over again of the same health symptoms the difference is, the treatments that each one received from the same medical Dept. at TRCI. As the defendant's have pointed out plaintiff must show that "the inmate must show that the chosen course of treatment was ""medically unacceptable under the circumstances""" and was chosen "in conscious disregard of an excessive risk to plaintiff's health" TRCI knew that Mr. Byers was exposed and treated him. TRCI knew that plaintiff and Byers were housed in the same unit, complained of the same symptoms, yet deliberately chose to not take simple "imaging" of plaintiff's lungs, yet defendant's did provide imaging for Mr. Byers.

Both Byers and Plaintiff had a pulmonary test, both showed obstruction, ( see plaintiff's medical history ) Mr. Byers received "imaging" ( see declaration Byers) confirming in a pulmonary specialist words environmental exposure to molds, Byers received a special steroid inhaler to treat his exposure

that was confirmed by the imaging.

Plaintiff's raised the same types of issues and symptoms, and has never had imaging done and no further steps taken to diagnose plaintiff health issues even though plaintiff continues to complain of breathing issues today. ( 2-28-22)

The defendant's clearly knew of the risk of harm, because Mr. Byers was exposed and treated and plaintiff and Byers lived on the same unit and complained of the same issues, during the same time period.

The facts of the matter's are, that once Byers was tested and confirmed to have been exposed to environmental mold, the proper procedure should have been to test and diagnose plaintiff, and any other AIC who complained of exposure that lived on that unit, using the same method of diagnostics, which consisted of imaging done right there at the facility. (TRCI has there own ex-ray machine making this a common practice of usage, (update 2-28-22 just like Snake River who has now over a year later finally taken the imaging and P.F.T to start the diagnosing process ))

Continuing with defendant's statement; " assuming arguendo there was mold in the showers, **(see photos of L.T attached )** shower mold is not a sufficiently serious harm to constitute cruel and unusual punishment." Simple mold in the shower would not be cruel and unusual punishment, but the fact is, by the defendant's not taking actions in a reasonably time, like moving plaintiff off of the infected unit, the mold caused serious enough injuries to plaintiff's lungs that two breathing enhancers were deemed medically necessary, those injuries could have been entirely avoided had the defendant's taken action, again the simplest solution would have been to move plaintiff, which medical, physical plant, security, or defendant Blewett could have done with a simple email to housing assignments, but instead the defendants chose to keep plaintiff on the infested unit, which caused the injuries now in litigation.

Also plaintiff would bring to this courts attention that the defendant's attorney is not a medical

expert as Dr. White is, and therefore the defendant's attorney making a legal (mold not being "a sufficiently serious harm to constitute cruel and unusual punishment".) conclusion is not her place but, that place belongs to a jury.

Continuing with defendant's statement, "Here, there is no evidence of defendant's deliberately allowing molds to grow in plaintiff's shower." Plaintiff notified the defendants over and over again with no actions except standard cleaning. ( **attached emails. filed with original response, entered on 10-28-20212 doc.#121** ) Environmental molds are to be removed by O.S.H.A standards. ( **attached O.S.H.A construction hazards page(s) attached.**) To properly and effectively remove environmental molds there are standards that must be followed, these standards were not followed, the unit orderlies tried to, but the molds kept coming back. ( **declarations from Nolan, and Byers** ) after months of issues the defendants started to remove the tiles in the showers on unit two, plaintiff personally saw the mold that was growing in the grout under the tiles, between the tiles and the walls,( **declaration Aaron Eaton attached** ) there was no way the standard cleaning would get the molds in it's entirety. Bob Adams told the defendants to continue with standard cleaning, there is no way the orderlies could have cleaned the shower mold well enough to be considered safe.

The defendant Mr. Stark confirmed the mold, (**declaration of Byers attached**) further it was only after the physical plant manager defendant Stark knew that the jig was up, and that the attempted cover up had failed, "that can of worms" ( **email J. Stark attached filed with original response, entered on 10-28-20212 doc.#121**) was now open and that's when the showers were demolished and finally the environmental molds were removed, yet not according to O.S.H.A. Standards. ( **see O.S.H.A. Standards attached, Hazards in Const. and declaration of Aaron Dale Eaton which plainly states that the standards were not followed.**)

Even once the showers were demolished, plaintiff's breathing has not come back and only a medical expert can say if it ever will. Plaintiff has now been moved to a new facility and his breathing

is not back to the way it was prior to the exposure. Plaintiff will more then likely suffer future harms as well.**( see Dr. white's declaration in it's entirety)** With all this plaintiff contends that there are genuine issues of material facts in dispute, and that there is an Eighth Amendment Claim.

### (D) ADA CLAIM
**Failure to exhaust administrative remedies for the ADA Claim.**

**291-109-0215 Grievance and Appeal Submission Limits (1) An AIC cannot have more than four active complaints (grievances, discrimination complaints, or appeals of either) at any time. Any grievance or appeal submitted that exceeds that limit will be found to be an improper use of the grievance review and discrimination complaint review systems and returned to the AIC with a statement of the rule.**

**291-109-0210 Permissible Grievance Issues, (2) <u>An AIC may not file more than one accepted grievance or discrimination complaint regarding a single incident or issue,</u> regardless of incident date, unless substantial new information is available about the incident or issue.**

The language here is plain, plaintiff was not allowed to file both a grievance and a discrimination complaint about the same issue, if plaintiff did then plaintiff faced actions that would further limit plaintiff's ability to lawfully complain using the systems provide for by DOC.

Strong v. David,297 F.3d 646, 649 (7th Cir. 2002) "No administrative system may demand that the prisoner specify each remedy later sought in litigation -for Booth v. Churner... holds that §1997e(a) requires each prisoner to exhaust a process and not a remedy" **( ADA is a remedy, not a process.)**

**(D-1) State defendants did not exclude plaintiff or deny plaintiff the ability to shower.**

In this section the defendants state that plaintiff must show "(2) he was either excluded from participation in or denied the benefits of a public entities services..."

28CFR§35.149, Discrimination prohibited. Except as otherwise provided in § 35.150, no qualified individual with a disability shall, **because a public entity's facilities are inaccessible to or**

_unusable_ **by individuals with disabilities,** be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity. § 35.133. Maintenance of accessible features (a) A public entity shall maintain in operable working condition those features of facilities and equipment that are **required to be readily accessible to and _usable_ by persons with disabilities** by the Act or this part.

The showers were not safely "usable" by plaintiff and the department of corrections has an obligation under law to provide plaintiff with appropriate and adequate showers to safely use and they must be usable without causing harm. All the defendants had to do was simply move plaintiff, yet they chose not to take any action, unless the defendant's Attorney is trying to say that plaintiff does not have the same rights that all other AIC's have and that right is to breath proper oxygen while in the shower.

The showers caused plaintiff's known disability to be injured and plaintiff asks this court to take judicial notice of the ruling on December 15th 2020 pg. 12, 13, 14, 15. "Although black mold would be unpleasant for all prisoners, Eaton, crucially, has alleged that because of his asthma, the black mold poses a more substantial risk of injury to him than non-disabled prisoners. Thus, in alleging that all prisoners in his housing unit used showers infested with black mold, Eaton has not pleaded himself out of an ADA claim. 3 The Court denies Defendants' motion to dismiss Eaton's ADA claim." the fact that this court has denied the defendant's earlier motion to dismiss should be taken into account and used in this response as well.

As this litigation proceeds, Eaton should consider that, under § 12132, discrimination by reason of one's disability is **discrimination that is either intentional or the product of deliberate indifference.** Updike, 870 F.3d at 950. To allege deliberate indifference, a plaintiff must allege facts plausibly showing that the defendant both (1) had "knowledge that a harm to a federally protected right substantially likely,"( **this can be inferred by the obsessiveness of the showers condition, see the photos and the fact that the unit officers were concerned enough to send multiple emails and**

work orders) and (2) "failure[d] to act upon that ( **again they could have simply moved plaintiff** ) likelihood." Duvall, 260 F.3d at 1139. When a plaintiff informs the public entity of the needs prompted by his disabilities, he satisfies the first prong. Id. The failure to act, meanwhile, "must be a result of conduct that is more than negligent" and "involve[] an element of deliberateness." Id. Failure that is merely "attributable to bureaucratic slippage," does not amount to deliberate indifference. Id.

The defendant's could have taken easy steps to remove plaintiff from the exposure, plaintiff complained over and over, there was multiple complaints from multiple inmates, there was a confirmed case of exposure with Mr. Byers and plaintiff and Byers used the same showers daily complaining of the same symptoms to the same medical dept.

The ability to breath oxygen while in the shower is a human right, that right is protected by the Constitution's Eighth Amendment and the ADA. The ability to breath while in the shower is a fundamental right to life as our health is in jeopardy when we don't get the proper amount of oxygen.

TRCI/ODOC new that plaintiff had in their own words "a long history of asthma/copd" when plaintiff complained of the breathing issues the defendants should have taken the reasonable steps to secure plaintiff's ability to effectively breath, TRCI deliberately chose to keep plaintiff housed on the infested unit causing the injuries, forcing plaintiff to either not shower and risk getting into trouble for violating unit rules of hygiene or subjecting plaintiff to long periods of time without proper oxygen.

When TRCI kept plaintiff on the infested unit even after, months of repeated complaints, allowing injuries and, then further injuries to happen to his respiratory system, yet allowing all other inmates to shower with proper oxygen, is discrimination based on plaintiff's disability, unless defendants are stating plaintiff is not entitled to oxygen while in the shower like all other inmates are entitled to.

### MORE CASE LAW TO SUPPORT PLAINTIFF'S CASE.

Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th cir.1982) the more basic the particular need, the

shorter the time it can be withheld. ( **efficient oxygen is a real basic need, how long can oxygen be withheld before the withholding becomes deliberate indifference?** )

MADYUN v. THOMPSON, 657 F.2d 868 (7th Cir.1981) Inmate are entitled to an environment that does not threaten their mental and physical well being. ( **the showers did "threaten physical well being" plaintiff's lungs are damaged and most likely will future damages too.** )

WILSON v. SEITER, 501 U.S. 294, 303-04, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) The court held that a prisoner can bring an eighth amendment claim by applying the deliberate indifference standard to a conditions of confinement that denies an obvious human need,( **oxygen is "an obvious human need"** ) such as food, warmth, or exercise, and proving that a prison official was deliberately indifferent to that "identifiable human need"

HALLETT v. MORGAN, 296 F.3d 732, 746 (9th Cir.2002) A delay in providing medical treatment does not constitute deliberate indifference, to establish deliberate indifference, a prisoner must show that the delay led to further injury. ( **again the injuries are still not diagnosed, and two different lung aids were deemed medically necessary, and the injuries could continue to show up later see Dr. Whites declaration.** )

Hamilton v. Endrell, 981 F.2d 1062, 1066 (9th Cir. 1992) Prison officials are deliberately indifferent when they "deny, *delay,* or intentionally interfere with medical treatment." ( **how long of a delay needs to be shown? Plaintiff has still not received medical care and it has been over 2 years, yet Mr. Byers received medical care imaging, shortly after complaints.** )

Jet v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) Deliberate indifference in the medical context may be shown by a purposeful act or a failure to respond to a prisoner's pain or possible medical need and harm caused by the inferences. ( **the indifference of the defendants not diagnosing plaintiff has caused harms, and have caused further harms, along with, the more then likely-hood of future harm.** )

Carnell v. Grimm, 872 F.supp. 746, 755 (D.Haw.1994) A serious medical need exist if the "failure to treat the need could result in further significant injury or unnecessary and wanton infliction of pain"" ( **not being able to breath hurts, and again further injuries can happen in the future.)**

Greeno v. Daley, 414 f.3d 645, 653 (7th Cir. 2018) Although inmate must demonstrate deliberate indifference, he "is not required to show he was literally ignored." ( **no further attempt to diagnose plaintiff has taken place this is being "ignored"** )

Johnson v. Karnes, 398 F.3d 868 (9thCir.2005) Prison officials knowledge of prisoners serious medical need {oxygen} may be inferred from circumstantial evidence. ( **obviousness of the showers conditions, see photos, emails, and all other evidence provided in response, and in the entire case file.)**

Jet v. Penner, 439 F.3d 1091 (9th Cir. 2006) Eighth Amendment deliberate indifference claim stated when prison delayed two weeks to treat prisoner's broken thumb and more then three months for follow-up treatment. ( **Plaintiff has waited close to two years to have any type of follow up, yet officials have taken no steps to diagnose plaintiff, and have taken even the abuteral asthma inhaler away, and have not tried to diagnose his lung condition, because the dept. of corrections medical staff will not test for mold exposure on AIC's even though they are charged with the care of plaintiff's health and medical care.)**


## PLAINTIFF'S RESPONCE AS TO HIS FIRST AND FOURTEENTH AMENDMENT CLAIMS, ARE WITHDRAWN

### PLAINTIFF'S, CONCLUSION.

First,   Plaintiff request that this court consider whether plaintiff has had adequate amount of time for discovery, without being hindered by the defendant's attorney, as plaintiff had to file multiple motions to compel prior to the defense producing requested documents and in fact plaintiff is now

waiting for responses to request as of 9-7-21 because the defendant's waited till this court formally accepted plaintiff's 4th amended complaint, to take any action for documents requested from now named defendant's.

Second, Plaintiff requests this court to view the grievance procedures in light most favorable to the plaintiff.

Third, Plaintiff request that this court consider whether there is persuasive evidence that ODOC officials thwarted the effectiveness of the grievance procedures for plaintiff.

Fourth, Plaintiff request that this court consider how theses modifying terms affected the plaintiff's case that is, whether there is remedies he failed to exhaust were available under the principles set out here.

Fifth, Plaintiff request that this court take in to consideration any precedent, law, rule, procedures, the plaintiff has unknowingly left out of his defense to the defendant's motion for summary judgment.

Sixth, Plaintiff request that this court deny the defendant's motion as there are genuine issues of material facts in dispute, and the defendant's have been fully exhausted.

Seventh, Plaintiff hereby incorporates all documents sent with this summary judgment response and the first, as fully set forth herein all documents are meant as evidence in court and are given under penalty of perjury. All of this response and all of the statements made herein are plaintiff's and is meant as a declaration for the court to use as factual statements.

Eighth, Plaintiff asks this court to accept the documents that were filed with the first response to the defendant's first motion for summary judgment on the 27th of October 2021 so that plaintiff does not submit multiple filings of the same documents.

Plaintiff also points out that deliberate indifference boils down to, **(ONE)** that the defendant knew of a medical need, this the defendants admit, to this court, in lots of places where plaintiff

informed them of the mold exposure, the defendant's even have photos of the mold as seen in the documents provided to this court with the prior response to summary judgment, as for defendant Manney any community doctor would have taken steps with the information at hand to diagnose plaintiff and remove plaintiff from the exposure **(TWO)** no action being taken to diagnose and treat the plaintiff, or to remove the plaintiff as fast as possible from the exposure causing harms, this the defendants have admitted to as well when defendant Maney tells this court that he treated plaintiff for asthma, yet took no steps to diagnose, treat or to even start the process for the mold exposure that plaintiff complained of, the defendant's did not move the plaintiff from the harmful unit when they could have easily done so with a simple email to housing officer.

WITH ALL THIS PLAINTIFF CONTENDS THAT THERE IS DISPUTTED FACTS.

DATED THIS 9TH DAY OF MARCH. 2022.     Respectfully,

_Aaron Dale Eaton_
(Signature)

I, Aaron Dale Eaton, duly sworn, do declare to be true and correct to the best of my belief and knowledge under penalty of perjury; I am over the age of twenty-one (21) and have personal knowledge of the matters stated herein; I have resided in the care and custody of O.D.O.C. Since: 2017, and all these statements are meant to oppose the defendant's motion for summary judgment and meant as evidence in open court.