# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AARON DALE EATON**, | Case No. 2:20-cv-1251-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TWO RIVERS CORRECTION INSTITUTION GRIEVANCE COORDINATOR EYNON**, *et al*, | |
| Defendants. | |

Aaron Dale Eaton. Plaintiff, *Pro Se*

Ellen F. Rosenblum, Oregon Attorney General, and Vanessa A. Nordyke, and Jill Conbere, Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants Blewett, Darcy, Eynon, Lemmon, Maney, Robinson, Rossi, Stark, and Willis.

Scott G. O'Donnell and Trenton Joseph Andreasen, KEATING JONES HUGHES PC, 200 SW Market Street, Suite 900, Portland, OR 97201. Of Attorneys for Defendant LeCloux.

**Michael H. Simon, District Judge.**

Plaintiff Aaron Dale Eaton (Eaton) is an adult in custody (AIC) at the Snake River

Correctional Institution (SRCI) and previously was in custody at Two Rivers Correctional

Institution (TRCI). Representing himself, Eaton alleges that Defendants violated his

constitutional rights under the First, Eighth, and Fourteenth Amendments, as well as his rights under the Americans with Disabilities Act (ADA), by forcing him to use showers infested with black mold and failing to provide him with appropriate medical care. Defendants are current and former employees of the Oregon Department of Corrections (ODOC) at TRCI. Now before the Court are four motions: two motions for summary judgment filed by Defendants (ECF 140 and ECF 162), Eaton's motion to incorporate certain documents (ECF 178), and Eaton's two motions to supplement the record (ECF 181 and ECF 186). For the reasons stated below, all five motions are GRANTED. By separate Judgment, this case is terminated.

## STANDARDS

### A. Motion for Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**B.  *Pro se* Pleading Standard**

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**BACKGROUND**

Eaton's Fourth Amended Complaint (ECF 96) is the operative complaint for purposes of the pending motions. In that pleading, Eaton names ten Defendants, primarily using only their last names and identifying their roles within ODOC. Fourth Am. Compl. (ECF 96) ¶¶ 8-17. Defendant Stark was a manager of the TRCI Physical Plant. *Id.* ¶ 8. Defendant Darcy was an assistant manager at the TRCI Physical Plant. *Id.* ¶ 9. Defendants Willis and Lemmon were both employed as "unit [five] day officers" at TRCI. *Id.* ¶¶ 10-11. Defendants Rossi and Eynon were

TRCI grievance coordinators. *Id.* ¶¶ 12-13. Defendant Maney was a medical provider at TRCI. *Id.* ¶ 14. Defendant Lieutenant Robinson is alleged to have been "employed as an agent of the State of Oregon, assigned to the [TRCI.]" *Id.* ¶ 16. Defendant T. Blewett was the Superintendent of TRCI. *Id.* ¶ 17. Collectively, the Court refers to these as the "State Defendants." The remaining Defendant is Cynthia LeCloux, who was one of Eaton's medical providers at all relevant times. *Id.* ¶ 15.

Eaton has been in the custody of ODOC since July 13, 2017 and has an "earliest release date" of August 25, 2027. Eynon Decl. (ECF 141) ¶ 3. Eaton was housed at TRCI from August 10, 2017, to July 1, 2021, at which time he was transferred to SRCI. *Id.* Eaton's claims in this lawsuit arise out of the alleged presence of black mold in the showers of Eaton's unit at TRCI. Fourth Am. Compl. ¶¶ 20, 24. During his time at TRCI, Eaton submitted more than 60 grievances, five of which concerned his allegations of black mold. *See* Eynon Decl. Ex. 4 (ECF 141-4) at 1-4.

The process for grievances and appeals in Oregon is stated in Oregon Administrative Rule (OAR) 291-109-0205. An AIC must submit his grievance within 14 calendar days of the grieved incident or issue. OAR 291-109-0205(1). The facility shall respond within 35 (or, in some circumstances, 49) calendar days. OAR 291-109-0205(2). If a grievance is denied, an AIC wanting to appeal must submit an initial appeal no later than 14 days from the date the response was sent. OAR 291-109-0205(3). The facility shall respond to an initial appeal within either 35 or 49 days, depending on certain circumstances. OAR 291-109-0205(4). An AIC may then submit a final appeal within 14 days. OAR 291-109-0205(5). The facility shall respond to the final appeal within either 35 or 49 days. OAR 291-109-0205(6).

The following is an overview of Eaton's five relevant grievances and their respective dispositions:

## A.  Grievance 1 (TRCI.2020.03.148)

On March 20, 2020, Eaton submitted to the Grievance Coordinator's Office a grievance alleging failure by "Physical Plant/Medical" staff to address "toxic black mold" that was "discovered in most of the unit showers on or about [February 28, 2020]." Eynon Decl. Ex. 5 (ECF 141-5) at 9-12 (Grievance 1). The Grievance Coordinator's Office responded on April 14, 2020, stating that the grievance did not meet the requirements of OAR 291-109-0210, due to Eaton's failure to "demonstrate[] misapplication of department policies, rules or other directives, unprofessional actions of department employees, volunteers, or contractors, inadequate medical or mental health treatment, sexual abuse or sexual harassment or excessive use of force by department employees." *Id.* at 13. Additionally, the response noted that Grievance 1 "contains multiple issues—mold and medical treatment," but that "[a]n AIC may only request review of one matter, action, or incident per grievance." *Id.* Grievance 1 was returned to Eaton for corrections due to those deficiencies. *Id.* at 15-16. After Eaton twice resubmitted his grievance, Defendant Stark responded on June 11, 2020, stating in relevant part:

> Upon my recent visual inspection of the Unit 2 showers, nothing visible was seen concerning this allegation. There was no visible discoloration or other notable characteristics, including visible textures or odor. The condition of the Unit 2 showers appear to be maintained in an ordinary fashion. . . . Cleaning products are regularly provided to each housing unit to ensure that the cleanliness of the showers, as well as the entire unit, is maintained. Additionally, during the current virus concerns of covid-19, effective April 14, 2020, bleach has been provided to all housing units as an additional cleaning agent. Housing unit staff have reported hearing no complaints for several months about the condition of the Unit 2 showers.

*Id.* at 8.

Eaton filed an initial appeal, objecting, among other things, that Stark was not qualified to determine whether there was mold in the showers and that other staff, including Robinson, had observed the showers and "verified the absolute presence of black mold." *Id.* at 4-6. The appeal was returned for correction and ultimately denied by Defendant Blewett, who wrote that Robinson "stated that he never made a comment nor agreed that the showers had 'black mold' as he is not a subject matter specialist." *Id.* at 3. Blewett informed Eaton that the showers were scheduled to be replaced soon. *Id.* Eaton filed a final appeal, asserting that "[t]he showers being replaced now does not make my injuries go away," and stating that he had sent samples of the mold out for testing. *Id.* at 2. Mark Nooth, Eastside Institution Administrator, responded on November 2, 2020, concurring with the initial denial of the appeal, and noting that this "conclude[d] the grievance review process for this matter." *Id.* at 1.

**B. Grievance 2 (TRCI.2020.04.020)**

On April 2, 2020, Eaton filed a grievance alleging that Defendant Rossi failed to respond to Eaton's communications. Eynon Decl. Ex. 6 (ECF 141-6) at 2 (Grievance 2). Grievance 2—like Grievance 1—was returned to Eaton for non-compliance with OAR 291-109-0210. *Id.* at 1. The record does not reflect that Eaton either resubmitted his grievance or appealed.

**C. Grievance 3 (TRCI.2020.04.186)**

On April 20, 2020, Eaton filed a grievance alleging that "Physical plant" staff "failed to protect [him] from the mold in [the] unit 2 showers which you have been notified about." Eynon Decl. Ex. 7 (ECF 141-7) at 11 (Grievance 3). Grievance 3 was denied on April 27, 2020. *Id.* On May 22, 2020, Grievance 3 was returned to Eaton by Defendant Rossi, on the grounds that it did not qualify under OAR 291-109-0210 and that AICs were not permitted to submit more than four AIC grievances per calendar month. *Id.* at 10. Eaton filed an initial appeal, arguing that Rossi was "hindering, stopping, chilling, obstructing my protected right of the grievance process." *Id.*

at 6. Rossi denied the appeal, noting that Eaton did not dispute that he had already submitted four

grievances that month. *Id.* at 4. Rossi additionally stated that Eaton's "concerns have been taken

seriously and investigated by Physical Plant Manager Stark," whose findings Rossi laid out. *Id.*

Eaton filed a final appeal, contending that, because one or two of his grievances from the month

of April had already been denied when he filed Grievance 3, he did not have four active

grievances pending, and so should not have been prevented from filing another. *Id.* at 2. Rossi

denied Eaton's final appeal on July 1, 2020. *Id.* at 1.

**D.  Grievance 4 (TRCI.2020.05.036)**

Eaton filed a grievance against "[t]he Director of ODOC" on May 10, 2020. Eynon Decl.

Ex. 8 (ECF 141-8) at 8-10 (Grievance 4). Eaton alleged that ODOC Director Colette Peters[1]

failed to provide for his safety, as required by Oregon law, based on the presence of black mold

in the unit two showers. *Id.* Defendant Stark responded to Grievance 4 on June 10, 2020, with

the same information that he provided in his response to Grievance 1. *Id.* at 7; *see also* Eynon

Decl. Ex. 5 (ECF 141-5) at 8. Specifically, Stark assured Eaton that there was no observable

mold in the showers, that appropriate cleaning products were provided, and that heightened

cleaning procedures had been implemented because of the COVID-19 pandemic. Eynon Decl.

Ex. 8 (ECF 141-8) at 7. Eaton filed an initial appeal, *id.* at 5-6, which Defendant Blewett denied,

*id.* at 4. Eaton then submitted a final appeal, *id.* at 2-3, which Nooth denied on August 26, 2020,

*id.* at 1.

**E.  Grievance 5 (TRCI.2020.05.077)**

Eaton submitted his fifth relevant grievance on May 8, 2020, against "Medical Provider."

Eynon Decl. Ex. 9 (ECF 141-9) at 8-10 (Grievance 5). Grievance 5 alleged that medical staff had

---

[1] Eaton has not named Colette Peters as a Defendant in this lawsuit.

"failed to treat, and or test [Eaton]" for certain respiratory conditions caused by black mold, and Eaton requested "adequate health and medical care for persons confined." *Id.* at 8. He requested to "have the provider not a nurse see me." *Id.* at 10. Grievance 5 was returned to Eaton for non-compliance with a variety of rules, *id.* at 12, and ultimately responded to substantively on June 24, 2020, *id.* at 7. The response stated that "[d]ocumentation shows [Eaton's] long history of asthma and COPD, with corresponding and successful treatments. [Eaton has] not presented any additional symptoms that would indicate other than exacerbation of either condition." *Id.* at 7. The response noted that "[n]urses are capable of assessing very effectively and consulting with Providers to assure needs are met," and also found that Eaton had "been seen, assessed and treated appropriately as indicated." *Id.* Eaton filed an initial appeal. *Id.* at 4-6. Deputy Medical Director Dr. Warren Roberts, M.D., responded to Eaton's appeal, and stated that "[d]ocumentation confirms you are being seen and treated appropriately for the symptoms you have referred to in your grievance appeal." *Id.* at 3. Eaton filed a final appeal, stating that he had trouble breathing and was in pain, and requesting treatment. *Id.* at 2. J. Bugher, Assistant Director of Health Services, denied Eaton's final appeal, stating again that Eaton had been "evaluated appropriately by qualified Medical personnel and given treatment according to Community Standards and Practices. You have been evaluated by Nurses at Sick Call, who consulted with the Provider. You have been prescribed an Albuterol inhaler, and an additional inhaler; Wixela, as well as received a dose pack of Prednisolone." *Id.* at 1.

## DISCUSSION

The Court first addresses Eaton's three pending motions and then the two motions for summary judgment filed by Defendant LeCloux and the State Defendants.

**A.  Eaton's Motions to Incorporate Certain Documents and Supplement the Record**

After completing his briefing on both of motions for summary judgment, Eaton filed a one-page motion "Request[ing] the Court to Incorporate Declarations and Written Deposition" on March 28, 2022. ECF 178. Attached to Eaton's motion are two declarations by Eaton, ECF 178-1, 178-2, and a copy of Defendant LeCloux's written deposition, with notations made by Eaton included on the document, ECF 178-3. Neither the State Defendants nor Defendant LeCloux responded to that motion. After the time for responding to that motion concluded, Eaton filed a motion asking to "add[] to the court record, new evidence that was just received by the plaintiff." ECF 181 at 1. Eaton attached to that motion his own declaration and what appears to be a document detailing the side effects of certain medications. ECF 181 at 3-5.

The State Defendants responded, stating that they had "no objection to the untimely motion to supplement." ECF 182 at 2. On July 6, 2022, Defendant LeCloux responded that she too had no objections. ECF 183. Eaton then filed on July 29, 2022, a motion to add evidence. ECF 186. To that motion, Eaton attached a one-page document entitled "Oregon Department of Corrections Progress Notes," which detailed Eaton's medical history. *Id.* at 2. The document states that Eaton has "[m]oderately severe to severe obstructive lung disease," recommends that Eaton continue to use albuterol, and concludes that no further testing was necessary at the time of the writing of that report. *Id.* The State Defendants filed a response, indicating that they again had no objection to the "untimely motion to supplement." ECF 188.

The Court GRANTS Eaton's motion to incorporate certain documents (ECF 176) and his two motions to supplement the record (ECF 181 and ECF 186). Thus, in deciding Defendants' motions for summary judgment, discussed next, the Court has considered all evidence submitted by Eaton.

**B. Motions for Summary Judgment**

Eaton's Fourth Amended Complaint asserts four claims, alleging violations of his constitutional rights under: (1) the Eighth Amendment; (2) the First Amendment; (3) the Fourteenth Amendment; and 4) the ADA. Although Eaton's Complaint states that he brings each of his four claims against all Defendants, only his first and fourth claims—Eighth Amendment violations and violations of the ADA, respectively—relate to Defendant LeCloux's conduct. Defendant LeCloux moves for summary judgment against both of those claims, and the State Defendants move for summary judgment against all four claims. The State Defendants additionally move for summary judgment on the grounds that Eaton has not exhausted his claims as required by the Prison Litigation Reform Act (PLRA) against certain State Defendants and that Eaton has not demonstrated that State Defendant Blewett was personally involved in the alleged constitutional violations. The Court first addresses the PLRA and personal involvement arguments and then addresses the motions for summary judgment associated with each of Eaton's four claims.

**1. Claims Two and Three**

Eaton's second and third claims allege that the grievance process proceeded in a manner inconsistent with his First and Fourteenth Amendment rights, respectively. Fourth Am. Compl. (ECF 96) ¶¶ 122-131. Although Eaton's second and third claims specify that they are brought against "all defendants," *id.* at 21-22, those claims relate exclusively to Defendants Blewett, Rossi, and Eynon, and do not mention any of the other defendants. For the reasons stated below, the Court grants the motion for summary judgment in favor of Defendants Blewett, Rossi, and Eynon with respect to Eaton's First and Fourteenth Amendment claims.

### a. First Amendment

Eaton makes three arguments under the First Amendment. First, he alleges that the TRCI grievance procedure is inadequate and violates his First Amendment right "to petition ODOC for redress of grievance[s]" and that "this policy alone is retaliatory" and "violates [Eaton's] rights under the First Amendment." *Id.* ¶ 123. Second, he alleges that Defendants are "taking adverse actions against [Eaton] because of [his] protected conduct" and that certain administrative rules are "being abused" by Defendants such that Eaton's exercise of his First Amendment rights have been chilled. *Id.* ¶ 124. Third, Eaton alleges that Defendants Eynon and Rossi intentionally delayed the grievance process to "hinder, stymie, [and] chill [Eaton's] right to access the court for redress of grievances thereby Violating the First Amendment." *Id.* ¶ 126.

The First Amendment right to file prison grievances is "[o]f fundamental import to prisoners." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). It is clearly established law in the Ninth Circuit that "retaliatory actions taken against a prisoner for having exercised those rights" violate the First Amendment. *Id.* To prevail on a First Amendment retaliation claim, Eaton must demonstrate that "a state actor took some adverse action against an inmate because of that prisoner's protected conduct, and that such action chilled the inmate's exercise of his First Amendment rights and the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68 (cleaned up).

Eaton contends that the TRCI grievance procedure is inadequate and is, itself, retaliatory. Fourth Am. Compl (ECF 96) ¶ 123. To the extent that Eaton claims that the grievance procedure itself violates his constitutional rights, the Court considers that question below in addressing his

Fourteenth Amendment claim.[2] For purposes of his First Amendment claim, however, Eaton has not presented any evidence showing that the rules themselves constitute an adverse action against *him* sufficient to maintain a First Amendment claim. At most, the evidence of adverse actions in the record demonstrates only that Eaton's grievances were denied. Nothing in the record supports an inference that a TRCI employee retaliated against Eaton because of the grievances he filed. Nor has he presented evidence suggesting that Defendants intentionally delayed processing any of Eaton's grievances. Accordingly, Eaton has not shown a genuine issue for trial on his First Amendment claims against Blewett, Rossi, and Eynon.

### b. Fourteenth Amendment

Eaton's third claim alleges that Blewett, Eynon, and Rossi violated Eaton's Fourteenth Amendment rights by "originally denying [Grievance 1] then accepting it after a period of time, [which] was intentionally done to delay, hinder, stymie, chill, [Eaton's] right to access the court for redress of grievances." Fourth Am. Compl. (ECF 96) ¶ 128. Eaton also alleges that TRCI rules and the actions of Defendants do not allow the Plaintiff due process, which is protected conduct, and that this rule is being abused by Defendants. *Id.* at ¶ 129. As described above, however, Eaton has not presented any evidence showing a genuine issue for trial that Blewett, Eynon, and Rossi intentionally mishandled his grievances, such that their actions constitute a violation of the Fourteenth Amendment. The Court notes that it is well established that "the actions of . . . prison officials in reviewing . . . internal appeal[s] cannot create liability under § 1983." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Accordingly, Eaton cannot prevail on his argument that Defendants were incorrect in their assessment of his grievances.

---

[2] The Court notes that, in a separate case, it previously held that Eaton failed to state a First Amendment claim under the theory that the TRCI grievance procedure is inadequate. *See Eaton v. Blewett*, 2021 WL 3559462, at *3 (D. Or. Aug. 11, 2021).

Because he has not provided any additional evidence of Defendants' allegedly wrongful intentions, Eaton's Fourteenth Amendment claim does not survive summary judgment.

### 2. PLRA Exhaustion

State Defendants Rossi, Darcy, Willis, Lemmon, Eynon, Maney, and Robinson argue that they are entitled to summary judgment because the evidence, even when viewed in a light most favorable to Eaton, "shows a failure to exhaust." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). Because this Court has already determined that Defendants Rossi and Eynon are entitled to summary judgment on the only two claims asserted against them, the Court does not consider whether Eaton exhausted his remedies against these two defendants. Neither Defendant LeCloux nor Defendants Stark and Blewett assert an exhaustion argument.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides in part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This exhaustion requirement serves two primary purposes: to protect agency authority by requiring adherence to agency procedures and by allowing agencies an opportunity to correct their own mistakes and to promote efficient resolution of disputes. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Exhaustion requirements are directed toward parties who, "if given the choice, would not voluntarily exhaust." *Id.* Thus, to satisfy the PLRA exhaustion requirement, a prisoner must "properly" exhaust administrative remedies, including "compliance with an agency's deadlines." *Id.* at 90-91.

A prisoner's failure to exhaust administrative remedies may be excused "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (per curiam) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th

Cir. 2010)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1171). Courts employ a burden-shifting framework in analyzing administrative exhaustion. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams*, 775 F.3d at 1191. Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* This may include a "'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* (quoting *Albino*, 747 F.3d at 1172). "The ultimate burden of proof, however, remains with the defendants." *Id.*

The State Defendants asserting failure to exhaust argue that Eaton is required to name particular prison staff in his grievances in order to exhaust the administrative remedies against those staff members. That is not a correct statement of the law. In *Reyes v. Smith*, the Ninth Circuit considered whether a prisoner plaintiff "failed to exhaust administrative remedies because his grievance did not name all staff members involved in his case." 810 F.3d 654, 657 (9th Cir. 2016). The Ninth Circuit joined oher circuits in holding that, when prison officials "decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served: prison officials have had a fair opportunity to correct any claimed deprivation and an administrative record supporting the prison's decision has been developed." *Id.* at 658. Put another way: "The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* at 659 (cleaned up). Thus, "a prisoner's failure to list all staff members involved in an incident in his

inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies." *Estrada v. California Corr. Inst.*, 2021 WL 3268555, at *5 (E.D. Cal. July 30, 2021) (citing *Reyes*, 810 F.3d at 658). There must, however, "be a 'sufficient connection' between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had 'notice of the alleged deprivation' and an 'opportunity to resolve it.'" *Estrada*, 2021 WL 3268555, at *6 (citing *Reyes*, 810 F.3d at 659). Thus, the operative question for defendants who were not named in the underlying grievances is whether there is a sufficient connection between the alleged deprivation and the unidentified defendant. With that analytic framework in mind, the Court considers whether Eaton exhausted his administrative remedies with respect to Defendants Willis, Robinson, Maney, Darcy, and Lemmon individually.

### a. Willis

In Grievance 1, Eaton states that Defendant "Willis DID HIS DUTY calling for the bio-hazard orderly." Eynon Decl. Ex. 5 (ECF 141-5) at 9. Prison officials acknowledged this in returning Grievance 1 to Eaton: "[A]side from Officer Willis, have you informed any other staff of these concerns?" *Id.* at 15. Eaton does not, in any grievance, express dissatisfaction with Willis, and rather indicated that Willis was the only TRCI employee with whom he was satisfied. The Court is not persuaded that the laudatory comments here serve to put a prison employee or official on notice of an alleged deprivation. Although Eaton need not name all the staff members involved in the alleged deprivations, there must "be a 'sufficient connection' between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had 'notice of the alleged deprivation' and an 'opportunity to resolve it.'" *Estrada*, 2021 WL 3268555, at *6 (citing Reyes, 810 F.3d at 659). Eaton's grievances do not provide a sufficient connection between Willis and the alleged deprivations, in which he appears to

explicitly acknowledge that Willis did not participate. Eaton's grievances would not put either

Willis or any prison officials on notice that there was a matter to "resolve" with respect to Willis.

Thus, the Court grants Willis's motion for summary judgment.

### b.  Robinson

Although not expressly listed as the grieved party on any of Eaton's grievances,

Defendant Robinson named in documents filed by Eaton in several of his grievances. Eynon

Decl. Ex. 5 (ECF 141-5) at 5 ("L.T. Robinson came to the unit (2) . . . and verified the absolute

presence of black mold[.]"); Eynon Decl. Ex. 7 (ECF 141-7) at 2 ("And if there is no issue then

why is L.T. Robinson telling me that all showers in TRCI are having the tile removed due to

mold issues?"); Eynon Decl. Ex. 8 (ECF 141-8) at 5-6 ("[T]hese allegations [of black mold] have

been confirmed by L.T. Robinson on May 11th he took pictures of the mold . . . So you['re]

saying the pictures of the mold L.T. Robinson took is 'ordinary' hmm. ."); *id.* at 2-3

("Mr. Stark's review showed that anything discovered by L.T. Robinson was remedied so you

are clearly stating that L.T. Robinson was here first, hmm . . . Nope Mr. Stark was here first . . .

How can what Mr. Stark did fix L.T. Robinson and what L.T. Robinson found?"). The crux of

Eaton's claims is that TRCI staff knew of the mold and did not take actions to remedy it. Eaton's

numerous references to Robinson's alleged knowledge of the mold is sufficient to put prison

officials on notice of the alleged deprivations. The Court denies Robinson's argument based on

lack of exhaustion.

### c.  Maney

In Grievance 5, Eaton named as the grieved party as "Medical Provider." Eynon Decl.

Ex. 9 (ECF 141-9) at 8. He noted in a later filing related to that grievance that he had "no clue as

to the name of [his] provider." *Id.* at 11. Although Grievance 5 does not name Maney

specifically, subsequent declarations make clear that Maney was one of Eaton's medical

providers, along with Defendant LeCloux (who has not moved for summary judgment on the basis of exhaustion), and that Eaton complained of mold issues to Maney. *See* ECF 174-1 at 38 ("Provider Maney has prescribed me inhalers due to breathing issues. Provider Maney has also renewed prescriptions for inhalers."); *see also* ECF 174-2 at 17 (AIC communication form directed to Provider Maney complaining of mold); *see also id.* at 58 ("During my entire time at [TRCI], I was never treated for the mold exposure that I repeatedly informed both Provider LeCloux and Provider Maney of on multiple medical visits."); *see also id.* at 63 (stating that Maney issued inhaler prescriptions); *see also id.* at 65 (indicating that Eaton spoke to Maney and LeCloux about his difficulties breathing); *see also* ECF 176 at 18 ("Any one of my T.R.C.I. medical providers, LeCloux and Maney could have taken the following actions to abate the exposure."). Maney does not dispute that he was one of Eaton's medical providers and that Grievance 5 named Eaton's "Medical Provider" as the grieved party. The fact that Eaton did not name Maney specifically does not mean that he has failed to exhaust his claims, where it is undisputed that Eaton properly grieved his "medical providers," of which Maney was one. Thus, the content of this grievance was sufficient to put Maney and prison officials on notice of Eaton's claims against Maney and to give an opportunity to resolve the issues. The Court denies Maney's argument based on lack of exhaustion.

### d. Darcy

As with Maney, Darcy is not mentioned in any of Eaton's five grievances. Eaton alleges that Maney is the "Physical Plant asst. manager." Fourth Am. Compl. (ECF 96) ¶ 9. There is no evidence in the record, however, regarding Darcy or whether he is, in fact, the assistant manager of Physical Plant at TRCI. Without any record evidence to that effect, the evidence does not demonstrate that Eaton exhausted his administrative remedies with respect to Darcy and so the Court grants Darcy's motion for summary judgment on that basis.

### e.  Lemmon

The Court is not persuaded that Eaton's grievances sufficiently put prison officials on notice of his claims against Defendant Lemmon. Lemmon is not identified in any of the five grievances or any of their supporting documents and it is not clear from the face of the complaint what Eaton alleges Lemmon's role was in the alleged deprivations. The evidence does not create a genuine dispute of material fact as to Eaton's failure to exhaust his available administrative remedies against Lemmon. Therefore, the Court grants Lemmon's motion for summary judgment on that basis.

In summary, the Court grants the motion for summary judgment with respect to Defendants Willis, Darcy, and Lemmon based on lack of exhaustion. The Court, however, finds at least an issue of fact on the question of exhaustion regarding Defendants Robinson and Maney.

### 3.  Personal Involvement

State Defendant Blewett moves from summary judgment against all claims asserted against him arguing "lack of personal involvement." ECF 140 at 5.[3] Blewett correctly states that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880

---

[3] The heading of this section of State Defendants' motion reads "*Peters* and Blewett should be dismissed for lack of personal involvement." ECF 140 at 5. "Peters" appears to refer to Colette Peters, Director of the Oregon Department of Corrections. As noted, Colette Peters is not, and never has been, a named defendant in this action. *See* n.1, *supra*.

Additionally, the Court notes that, although Defendant Blewett appears to move to dismiss, the pending motion is one for summary judgment. The Court thus considers whether there is exists a genuine dispute of material fact as to Blewett's personal involvement, not whether Eaton has failed to state a claim.

F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723

F.2d 675, 680-81 (9th Cir. 1984)). "A defendant may be held liable as a supervisor under § 1983

'if there exists either (1) his or her personal involvement in the constitutional deprivation, or

(2) a sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v.

Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite showing can be established by

demonstrating that the supervisor: (1) set in motion a series of acts by others or knowingly

refused to terminate a series of acts by others, which the supervisor knew or reasonably should

have known would cause others to inflict constitutional injury; (2) had his or her own culpable

action or inaction in the training, supervision, or control of his or her subordinates; (3)

acquiesced in the constitutional deprivation by subordinates; or (4) engaged in conduct that

shows reckless or callous indifference to the rights of others. *Id.* at 1207-08; *see also Felarca v.

Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) ("The requisite causal connection can be

established by setting in motion a series of acts by others, or by knowingly refusing to terminate

a series of acts by others, which the supervisor knew or reasonably should have known would

cause others to inflict a constitutional injury." (citing *Starr*, 652 F.3d at 1207-08)). "A plaintiff

must allege facts, not simply conclusions, that show that an individual was personally involved

in the deprivation of [the plaintiff's] civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194

(9th Cir. 1998).

Eaton, however, does not allege that Blewett is "liable for constitutional violations of his

subordinates." *Taylor*, 880 F.2d at 1045. Rather, Eaton clarifies in his response that Blewett was

*himself* informed of the health risks posed by the black mold and had the authority to move

Eaton's housing assignment but did not do so. ECF 174 at 14. This clarification is supported by

the Fourth Amended Complaint, which alleges that Eaton informed Blewett and others of information regarding the mold exposure, Fourth Am. Compl. (ECF 96) ¶ 94, and that Blewett, among other things, violated the ADA and Eaton's Eighth Amendment rights when Blewett *himself* failed "to remove [Eaton] from the housing unit" with the showers at issue, *id.* ¶ 136. Eaton has presented evidence supporting his allegation that Blewett was aware of his complaints that mold was present in the showers; in his responses to Eaton's second request for admissions, Blewett agreed that he was aware of Eaton's complaints. ECF 174-1 at 50. In two "AIC Communication Forms," one dated July 27, 2020, and the other dated September 2, 2020, Eaton specifically requested that Blewett address the shower mold issues. *Id.* at 46-47. The record evidence sufficiently supports Eaton's claim that Blewett was personally involved in the alleged constitutional violations such that dismissal of Blewett from this action based on a lack of personal involvement is not warranted.

### 4. Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment extends to the "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim under § 1983 for a violation of the Eighth Amendment, a prisoner must satisfy a two-part test. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). First, the prisoner must allege that "that the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities.'" *Id.* at 1057 (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). Second, the prisoner must allege that "the prison official 'acted with deliberate indifference in doing so.'" *Id.* (quoting *Hallett*, 296 F.3d at 744).

To allege that a prison official acted with deliberate indifference, the prisoner must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991)). But "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

### a. Defendant LeCloux

Defendant LeCloux moves for summary judgment against Eaton's Eighth Amendment claim against her, on the ground that Eaton has not shown a genuine issue for trial that she acted with deliberate indifference in providing him medical care. There is no genuine dispute of material fact as to the care LeCloux provided to Eaton. LeCloux was a medical provider at TRCI for two brief periods only—from August 25, 2020, to November 25, 2020, and from January 11, 2021, to March 19, 2021. LeCloux Decl. (ECF 163) ¶ 2. LeCloux saw Eaton twice—once on September 23, 2020, and once on October 25, 2020. *Id.* ¶¶ 3-5. Eaton's September appointment was a regularly scheduled asthma and COPD visit. *Id.* ¶ 3.

At that appointment, Eaton informed LeCloux of the mold issue and complained of trouble breathing. *Id.* ¶ 4. Based on those complaints, she scheduled him for a follow-up four weeks later, rather than the typical four months. *Id.* At the October follow-up appointment, LeCloux did not find anything of note but, based on Eaton's continued complaints of mold and trouble breathing, she ordered a Pulmonary Function Test to assess his lung function and a trial of a Long-Acting Beta Agonist inhaler. *Id.* ¶ 5. Eaton asserts that LeCloux "could have moved [him] with the easy actions of a medical move or even to let [him] shower down in the medical depart[ment] . . . yet chose not to." ECF 175 at 6. To prevail on a deliberate indifference claim, however, requires more than a difference in opinion as to the proper course of treatment. *See*

*Gordon v. Cnty. of Orange*, 6 F.4th 961, 970 (2021) ("In cases involving choices between alternative courses of treatment, plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health." (cleaned up)). Eaton has failed to present evidence showing a genuine issue that Defendant LeCloux's conduct amounted to deliberate indifference to Eaton's serious medical needs. *See Estelle*, 429 U.S. at 106. Thus, the Court grants Defendant LeCloux's motion for summary judgment against Eaton's Eighth Amendment claim.

### b.  State Defendants

The State Defendants also move for summary judgment against Eaton's Eighth Amendment claim, arguing that Eaton cannot show a deprivation of "the minimal civilized measure of life's necessities," that Eaton received appropriate treatment for his respiratory symptoms, and that Eaton cannot demonstrate that the remaining State Defendants acted with the requisite mental state.

The Court is persuaded that Eaton has not shown a genuine issue of material fact as to the State Defendants' mental state required to sustain his Eighth Amendment claim. The record does not reflect that the State Defendants acted with deliberate indifference regarding Eaton's allegations of unsafe shower conditions. In fact, the record reflects that, following receipt of Eaton's complaints, TRCI staff used bleach to clean the showers in question. *See* ECF 140-1 at 3-4, ECF 141-5 at 8. Eaton does not appear to dispute that staff used bleach to clean the showers, but argues that bleach is not the appropriate cleaning solution to use on black mold and that he informed prison officials of that fact when he submitted a document entitled "Truth About Mold" with one of his grievances. *See* ECF 141-7 at 7 ("<u>DO NOT</u> use bleach . . . on mold." (emphasis in original)). These actions do not suggest deliberate indifference; while the actions taken in

response to his complaints may, in Eaton's view, be inadequate, the record before the Court on these motions does not suggest that the State Defendants' conduct rose to the level of deliberate indifference. In the absence of evidence regarding the State Defendants' mental state, Eaton has not shown a genuine issue regarding his Eighth Amendment claim against the State Defendants. The Court grants the State Defendants' motion for summary judgment on Eaton's Eighth Amendment claim.

### 5. Americans with Disabilities Act

Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II covers discrimination against inmates in state prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The implementing regulations for § 12132 explain that discrimination on the basis of a disability include instances when a prisoner with a disability is "denied the benefits of, the services, programs, or activities of a public entity" because the prison's facilities are "inaccessible to or unusable by individuals with disabilities." 28 C.F.R. § 35.152(b)(1).

To prevail on an ADA claim, Eaton must show that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting *Duvall v.*

*Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as am. on denial of reh'g en banc* (Oct. 11, 2001)).[4]

### a. Defendant LeCloux

As with his Eighth Amendment claim, Eaton's ADA claim against Defendant LeCloux rests primarily on Eaton's disagreement with her choice of tests and treatments. *See* ECF 175 at 9 ("Defendant [LeCloux] . . . says [Eaton] was appropriately treated, yet even by Dr. Gulick's statements made to plaintiff . . . this is not true . . . Defendant [LeCloux] could have ordered imaging, blood tests, outside consultant, in-house doctor, showers in medical, a move to another unit [and] all this could have been completed by LeCloux."). Eaton does not allege that Defendant LeCloux treated him differently than other non-disabled inmates because of his disability; rather, he merely argues that the care she provided was insufficient. This is not sufficient to create a genuine dispute of material fact on Eaton's ADA claim against Defendant LeCloux. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010). The Court grants Defendant LeCloux's motion for summary judgment as to Eaton's ADA claim.

### b. State Defendants

Eaton alleges that the State Defendants violated his rights under the ADA by effectively preventing him from using the Unit 2 showers, when they failed to address the mold issue

---

[4] As with his earlier versions of his complaint, Eaton's ADA claim is asserted against all Defendants "in their individual and or official capacities as applicable." Fourth Am. Compl. (ECF 96) at 2. "Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001). Thus, the Court construes Eaton's ADA claim as one against Defendants in their official capacities. A plaintiff may simultaneously sue prison officials in their official capacities for an ADA claim and in their individual capacities for a § 1983 claim. *Id.*

adequately. The State Defendants argue that they did not exclude Eaton or deny his ability to use the shower and that Eaton has presented no evidence that any exclusion or denial was by reason of his disability. ECF 140 at 14-16. The Court agrees. The Court grants the State Defendants' motion for summary judgment as to Eaton's ADA claim.

## CONCLUSION

The Court GRANTS Eaton's motions to incorporate certain documents and to supplement the record (ECF 178, ECF 181, and ECF 186). The Court also GRANTS both Defendant LeCloux's Motion for Summary Judgment (ECF 162) and the State Defendants' Motion for Summary Judgment (ECF 140). By separate Judgment, this case is terminated.

**IT IS SO ORDERED.**

DATED this 30th day of August, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge